**LEBOLD et al. v. INLAND STEEL CO.**
(two cases).

Nos. 8233, 8234.

Circuit Court of Appeals, Seventh Circuit.

June 16, 1943.

As Modified on Denial of ·Rehearing
July 19, 1943.

Carl Meyer, Paul M. Godehn, and J. F. Dammann, all of Chicago, Ill., for appellant.

Silas H. Strawn, Arthur D. Welton, Jr., Thomas A. Reynolds, Frank H. Towner, and Franklin M. Warden, all of Chicago, Ill., for appellee.

Before EVANS, KERNER, Circuit Judges, and LINDLEY, District Judge.

LINDLEY, District Judge.

Both plaintiffs and defendant attack a judgment fixing plaintiffs' damages in pursuance of .our mandate in 125 F.2d 369, the. District Court. having found the value of .capital stock of the Inland Steamship Company as a "going prosperous concern, continuing in business" on May 1, 1936 to have been $2,350 per share. Plaintiffs assert that the evidence was such that the court could properly have fixed only a greater· value. Defendant contends that the court could not rightly have attributed any value to the shares other than that of the physical assets; and, alternately, that, if additional value was to be considered, in view of the evidence, the amount fixed was excessive.

Defendant's first contention is grounded upon the premise that we were wrong in our conception of the law when the cause was last before us. Ordinarily, when· a case has been once decided on appeal and remanded, whatever was before the court and disposed of by its decree is finally settled. In re Sanford Fork & Tool Co., 160 U.S. 247, 16 S.Ct. 291, 40 L.Ed. 414; In re Potts, 166 U.S. 263, 17 S.Ct. 520, 41 L.Ed. 994; Luminous Unit Co. v. Freeman-Sweet Co., 7 Cir., 3 F.2d 577. Obviously, however, if we were wrong, we have a right to, indeed, we should, correct our error. American Cyanamid

Co. v. Wilson & Toomer Fertilizer Co., 5 Cir., 51 F.2d 665; Brown v. Gesellschaft Fur Drahtlose Telegraphie, M.B.H., 70 App. D.C. 94, 104 F.2d 227; Johnson v. Cadillac Motor Car Co., 2 Cir., 261 F. 878, 8 A.L.R. 1023; Luminous Unit Co. v. Freeman-Sweet Co., 7 Cir., 3 F.2d 577; United States F. & G. Co. v. Commercial Nat. Bank, 5 Cir., 62 F.2d 718. So, too, if the evidence now before us is such as to make inapplicable our previous announcements. With this in mind, aided by able advocates' earnest argument, we have examined again the principles of law involved and found controlling on the previous record, in the light of not only what was previously presented but also of what was before the court upon the trial on the merits. After mature and deliberate consideration, we conclude that nothing now urged justifies any modification of our earlier announcement.

We have, then, the question of whether the allowance was excessive or inadequate.

The direct evidence as to value consisted of the testimony of expert witnesses supplemented by various charts and comparative analyses of other like and unlike corporations.

Plaintiffs' witnesses approached the problem from the investor's point of view, assuming a willing buyer and a willing seller, each equally well informed as to the facts. They supplied thirty-two charts demonstrating that the general trend of iron and steel production and shipments of ore on the Great Lakes were, in 1934 and 1935, on the upgrade, and that the ship company and defendant had made more rapid improvement than the industry in general. They included an exhaustive analysis of cargo rates, length of time the ship company's vessels were in commission, the average time of cargo runs, the number, gross tonnage and types of cargoes carried, total earnings, operating expenses, net earnings, operating ratio and net income from 1928 through 1934 and 1935, insofar as the figures were available.

Capitalizing the shares on the same ratio as the steel company's stock's quoted market prices bore to its earnings, they fixed the value in excess of $3,000 per share. Capitalizing them on the basis of $150 dividends, on the same ratio as other quoted securities' market values bore to declared dividends, they thought the resulting value for a share of the ship company would be as follows: (1) on the basis of U. S. Government bonds, maturing or callable after 12 years, $5,689; (2) on the basis of 30 corporate Moody AAA bonds, $4,167; (3) on that of 30 similar AA bonds, $3,947; (4) on that of 30 A bonds, $3,505; (5) on that of 30 BAA bonds, $2,918 and (6) on the basis of stock of 120 corporations on the N. Y. stock exchange, $3,563; (7) on 120 bonds, classified by industry, 40 industrials, $3,886; 40 railroads, $3,348 and 40 public utilities, $3,505; (8) on common stocks, 14 industrial heavy industries, $4,000, 8 operating railroads, $3,488 and 16 leased railroads, $2,885. These values were proportionably increased when capitalized on the basis of annual earnings of $164 (the ratio actually existing January 1 to May 1, 1936) or $178 (average earnings in 1933, 1934 and 1935) or $192.03 (earnings for 1935) or $200, (as a projected future earning), the figures upon the last basis, $200, being as follows: on the basis of operating railroads, $3,361, leased railroads, $3,868, industrials, $4,452 and Inland Steel Company, $3,155. Among the corporations compared were: Ingersoll-Rand Company, International Harvester Company, Mesta Machine Company, General Electric Company, Pullman, Inc., General Motors, Diamond Match Company, United States Gypsum Company, Harbison-Walker Refractories Company, The Glidden Company, Otis Elevator, Firestone Tire & Rubber Company, The Timken Roller Bearing Company, Kennecott Copper Corporation.

Defendant, capitalizing eleven years' average earnings of the ship company at 10 per cent, computed the value of each share at $1,289; using the years 1933, 1934 and 1935, on the same basis, its testimony was that the value was $1,636.10; and, using the seven years, 1927 to 1935 inclusive (excluding both 1929 and 1932 as exceptional in two extremes), $1,534.90. Defendant submitted also evidence of value upon the hypothesis that the existing traffic arrangement would continue for one year, its estimate being $714.13 per share, and, if the situation should remain unchanged for two years, $818.39 per share. Defendant also offered proof as to the earnings of other ship companies, engaged in independent business, over periods of eleven, seven, five and three years and attempted to demonstrate that, from a comparative viewpoint, the stock of the ship company was fairly worth $706 per share, on the seven years' earnings basis, and even less on the basis of the other periods. On the assumption that the traffic arrangement

would have persisted for one year and that at the end of that time the Steel Company would have entered into competition with the ship company, defendant presented a computation of $779.25 per share.

 The writer of this opinion has inclined toward the view that the evidence amply supports the District Court's finding as to damages, but the majority believes that the allowance was too liberal and in determining the soundness of that conclusion it is well to keep in mind that this is a suit in equity where the evidence is preserved for our reviewing examination. The testimony of the various expert witnesses was based upon the historical facts appearing in the annals of the ship company and in the industrial and financial records of other corporations. Various theories of capitalization, based upon these facts, resulted in variant conclusions. The wide range of expert opinion covered valuations running from $224.90 to $3,200 per share. Plaintiffs' witnesses gave emphasis to capitalization of past and pro-jected earnings. Defendant's dwelt more largely upon earnings and capitalization of allegedly comparative carriers. It now directs our attention to the absence of contractual relation between the Steel Company and the ship company; the possibility of termination of all relationship and the probable earnings of the ship company, were the relationship dissolved, as a competitive contract carrier at prevailing rates. We think the court rightly considered the enlightening testimony offered by each party, but it is the conviction of the majority that too much credence was given to the rosy prognoses of plaintiffs and too little to the deterring elements cited by defendant. After mature and careful analysis of all the evidence, therefore, the court finds that it does not justify a finding of value of the shares in excess of $1,350 each or in allowance of damages in excess of the difference between that value and the amount plaintiffs have received.

We think the District Court properly allowed interest at the rate of five per cent from May 1, 1936, inasmuch as defendant has been declared guilty of a breach of trust and plaintiffs have been deprived of their property from the time of such breach. Golden v. Cervenka, 278 Ill. 409, 116 N.E. 273; Duncan v. Dazey, 318 Ill. 500, 149 N.E. 495; Southern Pac. R. v. Bogert, 250 U.S. 483, 39 S.Ct. 533, 63 L.

Ed. 1099; Ervin v. Oregon Ry. & Nav. Co., C.C., 27 F. 625; American Seating Co. v. Bullard, 6 Cir., 290 F. 896; 2 Scott, Trusts, 1107; 4 Bogert, Trusts and Trustees, § 862, p. 2502.

Apparently there is confusion upon the part of one of the parties to the effect that it was the intent of our opinion that judgment be reversed and the cause remanded for a new trial. Such was not our intention. Accordingly, to remove any ambiguity, the last paragraph of the opinion is hereby deleted. The court modifies the judgment of the District Court by reducing plaintiffs' damages to the difference between what they have received and $1,350 for each share of stock held by them respectively, together with costs in the District Court and interest at the rate of 5 per cent from May 1, 1936. Thus modified, the judgment is affirmed. Each party shall pay one-half the costs in this court.

The petitions for rehearing are denied.

Draft judgment computing and fixing the total damages may be submitted.