**POTOMAC PASSENGERS ASSOCIATION,**
Appellant,

v.

**CHESAPEAKE AND OHIO RAILWAY COMPANY, a corporation, et al.**

No. 73–2015.

United States Court of Appeals, District of Columbia Circuit.

Argued 6 Nov., 1974.

Decided 25 Sept., 1975.

Rehearing and Rehearing En Banc Denied Nov. 17, 1975.

Pierre E. Dostert, Washington, D. C., for appellant.

James H. Pipkin, Jr., Washington, D. C., with whom William E. Miller, Michael K. Wyatt, Washington, D. C., and Robert O. Smith, Jr., Baltimore, Md., were on the brief for appellees.

Before FAHY, Senior Circuit Judge, and ROBINSON and WILKEY, Circuit Judges.

Opinion for the Court filed by Circuit Judge Wilkey.

Concurring opinion filed by Senior Circuit Judge FAHY.

WILKEY, Circuit Judge:

On 27 April 1971 Potomac Passengers Association ("Association") filed suit in the District Court against the Chesapeake and Ohio Railway Company and the Baltimore and Ohio Railroad Company ("C & O/B & O") to enjoin the discontinuance of nine passenger trains providing service between Cumberland, Maryland and Washington, D. C. The suit was characterized as one for violation of the Rail Passenger Service Act of 1970 ("Amtrak Act").[1] The District Court held the Association had no standing to sue under section 307 of the Act[2] and dismissed the complaint.[3]

On appeal this court found that, while the Association's suit admittedly sought a judicial interpretation of the Amtrak Act, it could not properly be considered a suit for a violation of the Act, and therefore was not controlled by the standing requirement of section 307. We reversed

---

1. 45 U.S.C. § 501 *et seq.* (1970).

2. Section 307 provides:

   (a) If the Corporation or any railroad engages in or adheres to any action, practice, or policy inconsistent with the policies and purposes of this chapter, obstructs or interferes with any activities authorized by this chapter, refuses, fails, or neglects to discharge its duties and responsibilities under this chapter, or threatens any such violation, obstruction, interference, refusal, failure, or neglect, the district court of the United States for any district in which the Corporation or other person resides or may be found shall have jurisdiction, except as otherwise prohibited by law, upon petition of the Attorney General of the United States or, in a case involving a labor agreement, upon petition of any employee affected thereby, including duly authorized employee representatives, to grant such equitable relief as may be necessary or appropriate to prevent or terminate any violation, conduct, or threat.

   (b) Nothing contained in this section shall be construed as relieving any person of any punishment, liability, or sanction which may be imposed otherwise than under this chapter.
   45 U.S.C. § 547 (1970).

3. *Congress of Railway Unions v. Hodgson,* 326 F.Supp. 68, 79–80 (D.D.C.1971).

the District Court, holding that the Association had standing under 28 U.S.C. § 1337[4] to sue for a declaratory judgment as to whether the trains involved provided "intercity" or "commuter and other short-haul" service within the meaning of the Act.[5]

On remand the trial judge referred this question to the Interstate Commerce Commission for an advisory opinion.[6] The Commission's opinion of 25 June 1973 held that none of the trains involved provided "commuter and other short-haul service"; therefore, C & O/B & O was free to discontinue the trains. By order of 3 August 1973 the District Court adopted the findings of fact and conclusions of law of the Commission.[7] This order is the subject of the instant appeal.

## I. FACTUAL AND LEGAL BACKGROUND

Prior to 1958 the discontinuance of a train, regardless of the type of service it provided, required the approval of the appropriate regulatory agency in each of the states through which the train passed.[8] In an effort to reduce losses on uneconomic passenger train operations, however, Congress in 1958 enacted section 13a of the Interstate Commerce Act.[9] This section gives railroads seeking to terminate a particular interstate train service the option of bypassing the state agencies by filing a notice of discontinuance with the Interstate Commerce Commission. Unless the Commission finds the discontinuance is contrary to the public interest, the railroad may halt service thirty days after filing.[10] Section 13a is entirely permissive. If a railroad does not choose to file with the Commission, jurisdiction is retained by the state agencies.[11]

The Amtrak Act was enacted in 1970 in order to ensure the maintenance of a national intercity rail passenger service network. The more efficient elimination of uneconomic routes was among the means Congress selected to achieve this goal.[12] Since the Amtrak Act applies only to "*intercity* rail passenger service,"[13] its provisions do not affect the discontinuance of *commuter* trains. For commuter train discontinuance the discretionary approval of state regulatory agencies or (at the railroad's option)

---

**4.** 28 U.S.C. § 1337 provides:

> The district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies.

**5.** *Potomac Passengers Ass'n v. Chesapeake & Ohio Ry. Co.,* 154 U.S.App.D.C. 214, 229–33, 475 F.2d 325, 340–44 (1973). This case was consolidated with another before the court, *National Association of Railroad Passengers v. Central of Georgia Railway Co.,* whose complaint clearly made out a violation of the Amtrak Act and which had also been dismissed for lack of standing. Reversing the trial judge, we held that section 307 did not constitute a bar to maintenance of such a suit by a private organization and that jurisdiction in the District Court could be grounded on 28 U.S.C. § 1337. 154 U.S.App.D.C. at 217–29, 475 F.2d at 328–40. Our decision in that case was appealed to the Supreme Court. (No appeal, on the other hand, was taken from our ruling in the case at bar.) On 9 January 1974 the Supreme Court overturned this court's decision, on the ground that "§ 307·provides the exclusive remedies for breaches of any duties or obligations imposed by the Amtrak Act, and that no additional private cause of action to enforce compliance with the Act's provisions can properly be inferred." *National Railroad Passenger Corp. v. National Association of Railroad Passengers,* 414 U.S. 453, 465, 94 S.Ct. 690, 696, 38 L.Ed.2d 646 (1974) [hereinafter referred to *N.R.P.C. v. N.A.R.P.*].

**6.** Order of 25 April 1973, App. 3.

**7.** App. 24.

**8.** *See United States v. City of Chicago,* 400 U.S. 8, 11 n. 3, 91 S.Ct. 18, 27 L.Ed.2d 9 (1970).

**9.** 49 U.S.C. § 13a (1970).

**10.** *See generally N. R. P. C. v. N. A. R. P.,* 414 U.S. at 462 n. 9, 94 S.Ct. 690 (1974).

**11.** *See Kennedy v. Baltimore & Ohio R. Co.,* 342 I.C.C. 19, 21 (1972).

**12.** *See N. R. P. C. v. N. A. R. P.,* 414 U.S. at 461–62, 94 S.Ct. 690 (1974).

**13.** Such service is defined in the Act as "all rail passenger service other than (A) commuter and other short-haul service in metropolitan and suburban areas, usually characterized by reduced fare, multiple-ride and commutation tickets, and by morning and evening peak period operations . . . ." 42 U.S.C. § 502(5).

the I.C.C. is still required. Section 401 of the Act,[14] however, authorizes any railroad which has entered into a contract with the Amtrak Corporation to discontinue any intercity passenger train as of right by simply notifying the I.C.C.

Pursuant to section 401, on 16 April 1971 B & O entered into a contract with Amtrak, relieving the railroad of its responsibility to continue intercity service. B & O took advantage of the contract to discontinue the nine trains involved in this case. It is the Association's contention, however, that these trains provided "commuter and other short-haul service" within the meaning of the Amtrak Act. They could not, therefore, be discontinued under the abbreviated procedure set forth in section 401, but only through the regular process of petitioning the appropriate state agencies or, under section 13a, the I.C.C.

When this case was last before this court the Association was seeking both a determination that the trains in question provided commuter service[15] and an injunction against their discontinuance.[16] The Association claimed the elimination of commuter service would be in violation of the Act. We responded:

The Act has nothing to do with commuter trains. If the trains at issue provide intercity rail passenger service, as B & O contends, there is no question but that their discontinuance is lawful under the Act. If the trains provide commuter and other short-haul service, as appellant alleges, there is no question but that their discontinuance is unlawful—*not under the Amtrak Act, but under the laws of the states through which they pass,* since

approval has admittedly not been sought from either the state regulatory agencies or the I.C.C.[17]

It followed that the District Court had no power to enjoin the discontinuance of the trains.

If they provide intercity rail passenger service, their discontinuance is concededly lawful. If they provide commuter service, since no notice of discontinuance has yet invoked the jurisdiction of the ICC, their discontinuance is a violation of state, not federal law. The District Court has no power to issue an injunction enforcing state law in this instance, for to do so would usurp the primary jurisdiction of the state regulatory agencies and would circumvent the procedure established by the state to enforce its own laws. Should B & O seek approval of the discontinuances from the ICC, an injunction would be inconsistent with the ICC's primary jurisdiction.[18]

Thus, it was, and is, clear that the Amtrak Act does not confer upon railroad passengers any special right to the continued operation of commuter trains. To the extent that the Association's complaint was premised upon the assumption that the discontinuance of a commuter train would violate the Act, it failed as a matter of law to state a cause of action.[19] In view of this, the previous panel, which included the author of the present opinion, examined the Association's complaint closely to determine if it could be read otherwise to state a viable federal claim. We found such a claim in the Association's prayer that the District Court issue an order referring the intercity-commuter issue to the I.C.C. for an

14. 45 U.S.C. § 561.

15. Specifically, the Association requested an order referring this question to the I.C.C.

16. Initially, only six trains were involved. On remand from this court, the District Court allowed the Association to amend its petition to increase to nine the number of trains it alleged had been wrongfully discontinued.

17. 154 U.S.App.D.C. at 232, 475 F.2d at 343 (footnotes omitted) (emphasis added).

18. *Ibid.* (footnotes omitted).

19. Moreover, if the Association's request for injunctive relief was based upon an alleged breach of the railroad's duty under the Amtrak Act, section 307 of the Act would bar a suit by the Association to enforce that duty. *See* note 5, *supra.*

advisory opinion.[20] We determined that this request was tantamount to an assertion of jurisdiction in the District Court to render a declaratory judgment as to whether the trains in question provided "intercity" service or "commuter and other short-haul service" within the meaning of the Act. We concluded that this decision was within the District Court's power.

> [T]he court may decide whether discontinuance of these trains is still subject to the jurisdiction of the state regulatory agencies and the ICC or whether they are exempted from such jurisdiction by the Amtrak Act. The sole issue in this case is interpretation of a federal law regulating the railroads, and the case is therefore one meeting the jurisdictional requirements of 28 U.S.C. § 1337 which grants jurisdiction of civil actions arising under any Act of Congress regulating commerce. The power to construe the Amtrak Act and declare the nature of these trains is subsumed within the power granted by the Declaratory Judgment Act, 28 U.S.C. § 2201 (1970).[21]

We therefore remanded the case to the District Court with instructions to adjudicate the merits of the controversy. Following the ICC's decision, the District Court found all nine trains provided "intercity" service within the meaning of the Amtrak Act. The Association appeals this declaratory judgment.

## II. THE QUESTION OF JURISDICTION UNDER 28 U.S.C. §§ 1337 & 2201

██ Both the Association and defendants C & O/B & O have briefed and argued to us, first, the meaning of the terms "intercity" and "commuter and other short-haul" under the Amtrak Act and, second their application to the facts of this case. Their approach was to be expected, in view of this court's earlier decision ordering the District Court to reach the merits of the controversy. Our own review of the merits, however, has led us to reassess the jurisdictional foundation of this suit. While fully aware of the respect due this court's prior opinion and regretful of the expenditures of time and energy which have gone into the present litigation, after a searching inquiry we have come to the reluctant conclusion that our prior decision with respect to the District Court's subject matter jurisdiction was incorrect as a matter of law.[22]

██ The Association invoked the District Court's authority under 28 U.S.C. § 1337, which confers "original jurisdic-

---

**20.** 154 U.S.App.D.C. at 233 n. 27, 475 F.2d at 344 n. 27.

**21.** *Id.* at 233, 475 F.2d at 344.

**22.** It is a commonplace of federal procedural law that a court, whether trial or appellate, has a duty to notice a failure of subject matter jurisdiction on its own motion at any time during the proceedings. *See generally* 5 *Wright & Miller, Federal Practice and Procedure,* § 1350, at 545–46 (Cum.Supp.1974). That both parties to this suit, and the trial judge, proceeded on the assumption that the case was properly before the District Court does not alter our responsibility. Federal subject matter jurisdiction cannot be created by consent, waiver, or even estoppel. *Mansfield, C. & L. M. Ry. Co. v. Swan,* 111 U.S. 379, 382, 4 S.Ct. 510, 28 L.Ed. 462 (1884). *See generally Wright & Miller, supra,* § 1393. Moreover, the doctrine of "law of the case" does not bar our review of the issue. In the first place, it is problematic whether this rule of judicial economy—which generally forecloses on a second appeal the reconsideration of an issue decided during the first appeal (see 5B *C.J.S. Appeal & Error* §§ 1821–34 (Cum.Supp.1975)—can apply to the question of subject matter jurisdiction. If a federal court is powerless to adjudicate a controversy, it is duty-bound to recognize that fact, however belated its realization. In the second place the doctrine is discretionary. It "merely expresses the practice of courts generally to refuse to reopen what has been decided, not a limit to their power." *Messenger v. Anderson,* 225 U.S. 436, 444, 32 S.Ct. 739, 740, 56 L.Ed. 1152 (1912). When an appellate court makes so fundamental an error as that of sustaining federal subject matter jurisdiction where none exists, we think the court must exercise its discretion to correct that mistake. *See, e. g., Lebold v. Inland Steel Co.,* 136 F.2d 876, 876–77 (7th Cir. 1943); *Brown v. Gesellschaft Fur Drahtlose Telegraphie, M. B. H.,* 70 U.S.App.D.C. 94, 95, 104 F.2d 227, 228 (1939) and cases cited therein.

tion of any civil action or proceeding arising under any Act of Congress regulating commerce . . .." [23] The inquiry crucial to the District Court's jurisdiction to whether the Association's suit "aris[es] under" a federal statute regulating commerce.[24] The question is much the same under 28 U.S.C. § 1331(a),[25] except that under the latter the action may arise under the Constitution or any law or treaty of the United States so long as the amount in controversy exceeds $10,000. It follows that case law on the question whether an action "arises under" for purposes of section 1331(a) is highly important to consideration of the same question under section 1337.

■ The difficulty with this court's earlier decision lies in our conclusion that even though the discontinuance of commuter trains without the approval of the appropriate state agencies is a "violation of state, not federal law," the case nevertheless "arises under" an Act of Congress regulating commerce. It has long been settled that an action does not "arise under" federal law if the federal question enters only by way of a defense to a state claim, and this even though the plaintiff tries to anticipate the defense in his complaint.[26]

A classic application of this doctrine was made by the Supreme Court in *Louisville & Nashville R. Co. v. Mottley.*[27] The plaintiffs in that case brought suit for specific performance of a contract for life-time free passes which the railroad had given them in 1871 in settlement of a damage claim. They alleged that the *sole ground upon* which the railroad based its refusal to comply with the contract was a 1906 amendment to the Interstate Commerce Act prohibiting free passes—which amendment they argued was unconstitutional as applied to them. The Court held that since this federal question could arise *only as a defense* to the suit for specific performance, even though it might be the sole issue in the case, it was an ineffectual basis for federal jurisdiction.

Although this doctrine has been criticized as often advancing form over substance, it is firmly established. The Supreme Court has repeatedly resisted efforts to undermine it.[28] Of particular

---

23. Jurisdiction was also invoked pursuant to 49 U.S.C. § 20 (1970), but it would not appear that this can help the Association's cause. Section 20(9) confers jurisdiction on district courts, upon application of the Attorney General, at the request of the Interstate Commerce Commission, alleging a violation of Chapter 1 of Part I of the Interstate Commerce Act, to issue a writ of mandamus commanding a common carrier to comply with the provisions of that chapter. The effort apparently was to utilize section 13a of the Act as a jurisdictional base; but no more than from section 307(a) of the Amtrak Act does it appear that a private cause of action can be derived from the provisions of section 20(9). *See* notes 2, 5 *supra.*

24. 1. Moore, *Federal Practice* ¶ 0.60[8.—3], at 626–27 (2d ed. 1948).

25. Section 1331(a) provides:

The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and arises under the Constitution, laws, or treaties of the United States.

28 U.S.C. § 1331(a) (1970).

26. [A] right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action. The right or immunity must be such that it will be supported if the Constitution or laws of the United States are given one construction or effect, and defeated if they receive another. A genuine and present controversy, not merely a possibility or conjectural one, must exist with reference thereto, and the controversy must be disclosed upon the face of the complaint, unaided by the answer . . . . Indeed, *the complaint itself will not avail as a basis of jurisdiction insofar as it goes beyond a statement of the plaintiff's cause of action and anticipates or replies to a probable defense.*

*Gully v. First Nat'l Bank,* 299 U.S. 109, 112–13, 57 S.Ct. 96, 97, 81 L.Ed. 70 (1936) (*citations omitted, emphasis supplied*). *See also* cases collected at 2 *Moore, Federal Practice* ¶ 2.07, at 400 nn. 20–24 (2d ed. 1948).

27. 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908).

28. Significantly, the rule extends even to those cases, such as the case at bar, where state agencies or courts retain jurisdiction over a particular subject matter only at the sufferance of Congress. *See generally Hart &*

relevance to the instant case is the court's decision in *Skelly Oil Co. v. Phillips Petroleum Co.*,[29] where it made clear that the passage of the Federal Declaratory Judgment Act [30] did not change the rule that an anticipated federal defense cannot be used by a plaintiff to gain access to the federal courts.

The Declaratory Judgment Act allowed relief to be given by way of recognizing the plaintiff's right even though no immediate enforcement of it was asked. But the requirements of jurisdiction—the limited subject matters which alone Congress has authorized the District Courts to adjudicate—were not impliedly repealed or modified.

\*   \*   \*   \*   \*   \*

The plaintiff's claim itself must present a federal question "unaided by anything alleged in anticipation of avoidance of defenses which it is thought the defendant may interpose." *Taylor v. Anderson*, 234 U.S. 74, 75–76, 34 S.Ct. 724, 58 L.Ed. 1218, *Louisville & Nashville R. Co. v. Mottley*, 211 U.S. 149, 152, 29 S.Ct. 42, 43, 53 L.Ed. 126.[31]

■ The Association can point to no federal law in this case which imposes a duty on C & O/B & O to continue the operation of the nine trains in question. If "intercity" in character, they were lawfully discontinued; if "commuter" trains, their discontinuance can only have violated state law. If the latter,

only a state regulatory agency, or a state court, could enjoin the railroads' action. By coming to Federal court, the Association in effect has anticipated C & O/B & O's federal defense, which could only be raised in state proceedings, based upon the exemption from state regulation contained in the Amtrak Act for the discontinuance of "intercity" trains.

■ It seems clear, then, that the District Court has never had subject matter jurisdiction to entertain this suit. "[A] suit does not so arise [under the laws of the United States] unless it really and substantially involves a dispute or controversy respecting the validity, construction or effect of such a law, upon the determination of which the result depends." [32] The construction of the words "intercity" and "commuter" cannot be a dispute arising under the statute here, for, as pointed out above, whichever term is properly applicable to each of these railroad services, the plaintiff cannot prevail thereby. A litigant cannot invoke federal jurisdiction merely to determine by which rationale he loses.[33] Even if "[t]he sole issue in this case is interpretation of a federal law regulating the railroads," [34] that issue properly arises only as a defense to an action under state law. As emphasized above, the fact that the Declaratory Judgment Act enables a party to anticipate a defense in advance of seeking a remedy does not mean he can avoid federal jurisdictional requirements.

Moreover, it is misleading to say that the sole issue in the case is the question

Wechsler, *The Federal Courts and the Federal System* 884–85 (1973). Under its commerce power, Congress could easily have placed all control over commuter train discontinuances in the federal courts. Instead, it left jurisdiction in the state regulatory agencies, except in those cases where a *railroad* files a notice of discontinuance with the ICC under section 13a. In the latter situation only the ICC has jurisdiction.

**29.** 339 U.S. 667, 70 S.Ct. 876, 94 L.Ed. 1194 (1950).

**30.** 28 U.S.C. § 2201 (1970).

**31.** 339 U.S. at 671–72, 70 S.Ct. at 879.

**32.** *Shulthis v. McDougal*, 225 U.S. 561, 569, 32 S.Ct. 704, 706, 56 L.Ed. 1205 (1912).

**33.** "The right or immunity must be such that it will be supported if the Constitution or laws of the United States are given one construction or effect, and defeated if they receive another." *Gully v. First Nat'l Bank*, note 26, *supra*.

**34.** 154 U.S.App.D.C. at 233, 475 F.2d at 344.

of an Amtrak exemption. Ultimately, another important issue, if the Association is to prevail, must be whether the discontinuances meet the "public convenience and necessity" requirements of state law. Under the present federal statutory scheme, if a state elected to allow railroads to discontinue commuter trains without any approval at all, the state would be acting within its prerogative. An aggrieved party would have no recourse to either a federal court or the ICC (Only a *railroad* can invoke the jurisdiction of the ICC under section 13a, which the railroad is obviously unlikely to do if it gets a favorable ruling from a state agency.) In the instant case, however, Maryland and West Virginia have chosen to require the railroads to secure official approval for their discontinuances.[35] Failure to obtain such approval, in the only situation in which it can help the Association, is a violation of state, not federal, law.[36]

In sum, while we are reluctant to upset our own prior decision, we are of the firm view that no federal court has the power to entertain this suit. Because of this failure of subject matter jurisdiction, we must reverse the District Court and remand with instructions to dismiss the case.

FAHY, Senior Circuit Judge (concurring):

I concur in the result reached in the opinion of Judge Wilkey, for reasons now to be explained.

When this litigation was here before, in *Potomac Passengers Ass'n v. Chesapeake & Ohio Ry. Co.*, 154 U.S.App.D.C. 214, 475 F.2d 325, 341, 344 (1973), the court decided that the issue as to the validity of the discontinuance of the trains,

cannot properly be characterized as a suit for a violation of the Amtrak Act, and it is therefore not controlled by the standing requirement of Section 307. Instead this suit, properly understood, seeks a declaratory judgment that the trains discontinued by B & O provide "commuter" service and are therefore outside the coverage of the Amtrak Act—that is, that their discontinuance is neither authorized nor barred by the Act but is subject to the pre-existing jurisdiction of state regulatory agencies and the ICC. We hold that the District Court has jurisdiction to hear the merits of this declaratory judgment and therefore reverse and remand.

\*     \*     \*     \*     \*     \*

The sole issue in this case is interpretation of a federal law regulating the railroads, and the case is therefore one meeting the jurisdictional requirements of 28 U.S.C. § 1337 which grants jurisdiction of civil actions arising under any Act of Congress regulating commerce. The power to construe the Amtrak Act and declare the nature of these trains is subsumed within the power granted by the Declaratory Judgment Act, 28 U.S.C. § 2201 (1970).

The subsequently decided case of *National Railroad Passenger Corp. v. National Ass'n of Railroad Passengers*, 414 U.S. 453, 94 S.Ct. 690, 38 L.Ed.2d 646 (1974) (*NARP*), is I think inconsistent with the above position and controls this case. In *NARP* a private association,

---

**35.** 7A Ann.Code of Md., Art. 78, § 72 (1969); 9 W.Va.Code Ann. § 24–3–1 (1971).

**36.** We express no opinion on the question whether the Association has standing under state law to file suit in state court, or a complaint with the appropriate regulatory agency (see, *e. g.,* 7A Ann.Code of Md., Art. 78, § 99 (1969)), to enjoin the discontinuance of a train.

Assuming such standing, the state court or agency might still defer to the primary jurisdiction of the ICC on the question of the characterization of "intercity" in the Amtrak Act. They could not, however, request a federal court to issue an advisory opinion on the issue.

similar for all relevant purposes to appellant PPA, sued in the District Court to prevent discontinuance of certain passenger trains, not, as here, because they were commuter instead of intercity trains, but because the parent railroad (Southern) of the subsidiary railroad (Central of Georgia), which proposed to discontinue the trains, had not entered into a contract with Amtrak. The Court pointed out,

> Since § 401(a)(1) [of the Amtrak Act] authorizes only a contract for Amtrak to undertake a railroad's *entire* responsibility for intercity rail passenger service, the respondent contends that Southern cannot relieve itself of only *part* of this responsibility by allowing a subsidiary to contract with Amtrak while declining itself to do so. Accordingly, the respondent argues that Southern and Central, having entered no statutorily authorized contract with Amtrak, are prohibited by § 404(a), 45 U.S.C. § 564(a), from discontinuing any passenger train before January 1, 1975.

*Id.* at 455 n.3, 94 S.Ct. at 692.

The Court stated:

> The gravamen of the respondent's complaint was that these discontinuances are not authorized by, and in fact are prohibited by, the Amtrak Act. (Footnote omitted.)

*Id.* at 454–55, 94 S.Ct. at 691.

In our case the gravamen of the PPA's complaint is properly stated in similar terms, that the discontinuances "are not authorized by, and in fact are prohibited by, the Amtrak Act," that is, they are prohibited by a railroad under contract with Amtrak, as is the situation with respect to appellees.[1]

Relying heavily upon legislative history the Supreme Court in *NARP* held

that under section 307 of the Amtrak Act only the Attorney General had a cause of action in the situation presented,[2] which I cannot distinguish legally, insofar as the existence of a cause of action is concerned, from our case. If in our case the trains were commuter they could not validly be discontinued by appellees, for appellees were under contract with Amtrak. In that situation appellees could validly discontinue only intercity trains.[3] The question to be decided accordingly is whether the discontinuances constituted violations of the Act by appellees on the ground the trains were commuter. If in *NARP* the parent railroad itself was required to have had a contract with Amtrak the trains would be discontinued in violation of the Act, for only the subsidiary which proposed to discontinue them had such a contract. The Supreme Court held that the resolution of the question, in light of section 307 of the Act, could only be litigated at the suit of the Attorney General. Thus, *NARP* holds that when, as there, and as in our case it seems to me, the question to be decided is whether or not the railroad has violated the Act, a cause of action to determine the question resides only in the Attorney General. Accordingly, no cause of action arose in the present case which PPA had standing to litigate.

As to the possibility of a different conclusion by virtue of 28 U.S.C. § 1337, our court in *Potomac Passengers, supra,* as pointed out, considered the case when it was here before to be one meeting the jurisdictional requirements of that provision of the Judicial Code, which grants "jurisdiction of civil actions arising under any Act of Congress regulating commerce." Mr. Justice Douglas in his dissent called attention to this possible basis for jurisdiction in *NARP*, stating,

---

1. The jurisdictional question with respect to discontinuance of commuter rail passenger service by a railroad not under contract with Amtrak is not necessary to be decided.

2. The only exception is the right section 307 gives in cases involving labor agreements.

3. Section 401 of the Act permits a railroad which has a contract with Amtrak to be relieved "of its entire responsibility for the provision of intercity rail passenger service." "Intercity rail passenger service" is defined in section 102, subsection (5), as "all rail passenger service other than (A) commuter and other short-haul service . . . ."

"Congress left untouched 28 U.S.C. § 1337 . . . ." (*NARP, supra,* at 468.) But the Court decided otherwise. Indeed, were section 1337 available to enable PPA to obtain a declaratory judgment, section 307 of the Amtrak Act would be stripped by indirection of the purpose the Supreme Court held it was to serve, to furnish the sole manner by which duties and obligations of the railroads arising under the Amtrak Act were to be determined.[4] And in his concurring opinion Mr. Justice Brennan recognized this. He saw no remedy available under section 1337, and would have left open only,

> the question whether a private suit for mandamus under 28 U.S.C. § 1361 might be maintained against the Attorney General if his refusal to act under § 307—even though within the letter of his authority—went "beyond any rational exercise of discretion." *United States ex rel. Schonbrun v. Commanding Officer, Armed Forces,* 403 F.2d 371, 374 (CA2 1968) . . . .[5]

*NARP, supra,* 414 U.S. at 465, 94 S.Ct. at 696.

From the foregoing I think the intervening decision of the Supreme Court in *NARP* requires that we hold that no cause of action accrued to PPA to challenge in the District Court the discontinuance of these trains. As I read the decision in *NARP* the Court holds that as part of the successful operation of the Amtrak Act Congress placed upon the Attorney General the responsibility of seeking compliance by railroads with their responsibilities under the Act. Accordingly, the decision of the District Court should be reversed and the case remanded to enable the court to dismiss the complaint.

---

4. It is pointed out in footnote 9 of the Supreme Court's opinion that under laws predating the Amtrak Act, Congress had also excluded remedies to parties aggrieved by discontinuance of train service. Accordingly, the restriction in the Amtrak Act which precludes a remedy to private parties unless obtained through suit by

the Attorney General is not without analogous precedent.

5. The opinion of Judge Wilkey is based on additional reasons for the unavailability of section 1337.