Donald D. GOLDBERG, M.D. and Joseph V. Simoni, Plaintiffs-Appellants,

v.

Hugh CAREY, as Governor of the State of New York, Robert Abrams, as Attorney General of the State of New York, and Albert B. Lewis, Superintendent of the Insurance Department of the State of New York, Defendants-Appellees.

No. 999, Docket 79–7142.

United States Court of Appeals, Second Circuit.

Argued April 30, 1979.

Decided June 28, 1979.

Morton Povman, Forest Hills, N. Y. (Anderman & Povman, Forest Hills, N. Y., Angelo J. Paliotto, New York City, and Arthur A. Anderman, Forest Hills, N. Y., of counsel), for plaintiffs-appellants.

Rosalind S. Fink, Asst. Atty. Gen. of the State of New York, New York City (Robert Abrams, Atty. Gen. of the State of New York, George D. Zuckerman, Asst. Atty. Gen., New York City, of counsel), for defendants-appellees.

Before LUMBARD, FRIENDLY and MULLIGAN, Circuit Judges.

FRIENDLY, Circuit Judge:

## I.

As part of its no-fault insurance plan for automobile accidents New York determined to regulate the charges that could be made by physicians and other providers of health service in caring for victims covered by the plan. Section 678 of the Insurance Law, which became effective December 1, 1977, provides as follows:

§ 678. Limitations of charges by providers of health services.

1. The charges for services specified in paragraph (a) of subdivision one of section six hundred seventy-one of this article and any further health service charges which are incurred as a result of the injury and which are in excess of basic economic loss, shall not exceed the charges permissible under the schedules prepared and established by the chairman of the workmen's compensation board for industrial accidents, except as otherwise provided in section thirteen-a of the workmen's compensation law.

2. The superintendent, after consulting with the chairman of the workmen's compensation board and the commissioner of health, shall promulgate rules and regulations implementing and coordinating the provisions of this article and the workmen's compensation law with respect to charges for the professional health services specified in paragraph (a) of subdivision one of section six hundred seventy-one of this article, including the establishment of schedules for all such services for which schedules have not been prepared and established by the chairman of the workmen's compensation board.

3. No provider of health services specified in paragraph (a) of subdivision one of section six hundred seventy-one of this article may demand or request any payment in addition to the charges authorized in subdivisions one and two of this section. Insurers shall report to the commissioner of health any patterns of overcharging, excessive treatment or other improper actions by a health provider within thirty days after such insurer has knowledge of such pattern.

Regulation No. 83 (11 NYCRR 68) of the State Insurance Department, promulgated pursuant to Section 678, adopts the existing workmen's compensation fee schedules, establishes maximum permissible charges for professional health services not covered in the workmen's compensation schedules, and provides for the arbitration of certain health provider claims. Section 671 of the Insurance Law provides, in relevant part:

1. "Basic economic loss" means, up to fifty thousand dollars per person: (a) all necessary expenses incurred for: (i) medical, hospital, surgical, nursing, dental, ambulance, x-ray, prescription drug and prosthetic services; (ii) psychiatric, physical and occupational therapy and rehabilitation; (iii) any non-medical remedial care and treatment rendered in accordance with a religious method of healing recognized by the law of this state; and, (iv) any other professional health services; all without limitation as to time, provided that within one year after the date of the accident causing the injury it is ascertainable that further expenses may be incurred as a result of the injury;

\* \* \* \* \* \*

The items of basic economic loss in this subdivision are all subject to the limitations and requirements of section six hundred seventy-eight of this article.

\* \* \* \* \* \*

For the purpose of determining basic economic loss, the expenses incurred under paragraph (a) of this subdivision shall be in accordance with the limitations of section six hundred seventy-eight of this article.

On December 23, 1977, the Medical Society of the State of New York, five other medical or dental societies, two physicians, two residents who had received injuries not of emergency character which several physicians refused to treat, another resident receiving treatment for injuries unrelated to use of a motor vehicle, and John Doe brought an action in the New York Supreme Court for Albany County, Index No. 9718/78. They attacked the statute as violating the Constitutions of the United States and of New York in a multitude of ways. They alleged (1) that the proposed fees were so low as to deprive physicians of their property without due process of law; (2) that § 678 bore no factual relationship to the legislative purpose of controlling insurance premiums; (3) that § 678 is unconstitutionally vague because of its failure to make clear whether physicians may accept payments in excess of the statutory fees voluntarily offered by patients, with physicians and one plaintiff patient claiming that it does not prohibit this, whereas the Insurance Department claims that it does; (4) that the regulation of the fees of health care providers but not of other furnishers of services to automobile accident victims was a denial of equal protection of the laws; (5) that payment of an equal state-wide fee denied equal protection to physicians in localities where costs of rendering service were higher; (6) that interprofessional distinctions in the fee schedule result in lower fees to physicians than to other professionals for performing the same service, again in violation of the equal protection clauses of both Constitutions; (7) and (8) that one patient, by virtue of her chosen physician's having refused to treat non-emergency cases at the stipulated fees or, because of legal doubts, to receive voluntary payments in excess thereof, had been denied equal protection and, having had to submit to the care of a physician not of her choice, and had been denied her right of privacy as guaranteed by the Ninth and Fourteenth Amendments of the Federal Constitution; (9) that the other patient who had been receiving treatment for injuries unrelated to the use or operation of a motor vehicle,

had been notified by her physician that he was being forced to raise his fees because of the less-than-cost reimbursement under no-fault, in violation of the equal protection clauses; (10) that some plaintiffs had paid premiums for health insurance entitling them to benefits in excess of those allowed by § 678, with consequent violation of the contracts clause, Art. I, § 10, of the Federal Constitution; (11) that plaintiffs had been deprived of their right freely to enter lawful contracts in violation of the 14th Amendment and of a provision of the State Constitution; and (12) that a plaintiff had been injured after December 1, 1977, had been unable to obtain the services of the physician of her choice because of his withdrawal of treatment of victims of automobile accidents save in emergency cases, and had been forced to accept alternate services "to her great mental and physical pain and anguish" in violation of numerous provisions of the Federal and State Constitutions. The court was asked to declare the statute unconstitutional and permanently to enjoin its enforcement. A state judge denied a temporary injunction on December 30, 1977 in part upon the ground that:

> In this Court's opinion, plaintiffs have not sufficiently demonstrated that they are entitled to the relief demanded in the complaint or that they have demonstrated they would suffer irreparable injury barring the granting of a preliminary injunction (the statute has only been in effect since December 1, 1977).

On May 11, 1978, appellants, Dr. Donald D. Goldberg, M.D., a member of the New York State Society of Orthopaedic Surgeons which is a plaintiff in the *Medical Society* case, and a patient, Joseph V. Simoni, filed the instant action in the District Court for the Eastern District of New York. Federal jurisdiction was predicated on various federal constitutional provisions, 42 U.S.C. § 1983 and 28 U.S.C. § 1343(3). The attacks on § 678 of the Insurance Law were essentially the same as in the pending *Medical Society* case in the state court. Plaintiffs immediately moved for a temporary injunction. Defendants countered with a motion

for a stay pending a final decision in the *Medical Society* case or, in the alternative, for dismissal under F.R.Civ.P. 12(b)(6) for failure to state a claim on which relief can be granted.

The district judge rendered an opinion on December 21, 1978. He noted that plaintiff's claim for void-for-vagueness because of uncertainty whether the statute prohibited voluntary payments in excess of the statutory rates would be removed by a state decision construing the statute in this respect, and that several other claims would be narrowed in scope if the state courts were to hold such payments to be permissible. Also the impairment of obligation of contracts claim would be mooted if the state courts were to find that § 678 required reimbursement of premiums paid for benefits no longer available. Accordingly he decided to retain jurisdiction but to abstain from exercising it "until a definitive determination of the State law questions has been obtained from the New York State courts." He suggested that plaintiffs might either seek to intervene in the *Medical Society* action or bring a new one. They might submit all questions to the state courts or, pursuant to *England v. Louisiana State Board of Medical Examiners*, 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964), choose to litigate only their state claims there and return to federal court for a disposition of their constitutional claims in light of the state courts' ruling on state law. "Accordingly", he concluded, "this Court abstains from exercising its jurisdiction to decide plaintiffs' motion and defendants' cross-motions." Plaintiffs appeal from this order.

## II.

■ Our initial inquiry must be whether the order is appealable. At first blush it would not appear to be. Clearly it is not a final order within 28 U.S.C. § 1291 in the ordinary sense of that term; nothing has been decided except that the district court will not decide federal law issues until the state courts decide state law questions. The district court's order staying its own proceedings pending decision in the state courts also fails to qualify as a temporary injunction under 28 U.S.C. § 1292(a) under the somewhat artificial rule of *Enelow v. New York Life Ins. Co.*, 293 U.S. 379, 55 S.Ct. 310, 79 L.Ed. 440 (1935) and *Etteleson v. Metropolitan Life Ins. Co.*, 317 U.S. 188, 63 S.Ct. 163, 87 L.Ed. 176 (1942), that in actions which were "at law" or would have been so prior to adoption of the Federal Rules of Civil Procedure, the stay order will be considered an injunction by the judge *qua* chancellor against himself *qua* common law judge. Since plaintiffs' action is equitable in nature, *Enelow-Ettelson* do not apply. See *Baltimore Contractors, Inc. v. Bodinger*, 348 U.S. 176, 75 S.Ct. 249, 99 L.Ed. 233 (1955).

Plaintiffs contend that both prongs of this analysis are flawed.

Plaintiffs' argument that the abstention order was final rests on the asserted authority of *Idlewild Bon Voyage Liquor Corp. v. Rohan*, 289 F.2d 426, 428 (2 Cir. 1961), vacated on other grounds *sub nom. Idlewild Bon Voyage Liquor Corp. v. Epstein*, 370 U.S. 713, 82 S.Ct. 1294, 8 L.Ed.2d 794 (1962). In a situation where no action was pending in the state courts, the district judge entered an order abstaining on all issues, although purporting to retain jurisdiction. We held the order was final under 28 U.S.C. §§ 1291 and 1292, without clearly specifying which. Judge Waterman said, 289 F.2d at 428:

No parallel state actions were pending and there was no state adjudication to await. There was nothing left to be done in the federal courts because the action there had been for all intents and purposes concluded. Appellant was effectively out of court—any action upon its prayer for injunctive relief was indefinitely postponed under these circumstances. There is no bar on this ground to appealability. See *Glen Oaks Utilities, Inc. v. City of Houston*, 5 Cir. 1960, 280 F.2d 330.

While disapproving another ground of the decision, the Supreme Court approved this one, saying, 370 U.S. at 715 n. 2, 82 S.Ct. at 1296 n. 2:

The Court of Appeals properly rejected the argument that the order of the District Court "was not final and hence unappealable under 28 U.S.C. § 1291, 1292," pointing out that "[a]ppellant was effectively out of court."

■ An important difference between *Idlewild* and this case is that there the district judge had referred all issues to the state court so that his reservation of jurisdiction was meaningless, whereas here he permitted the plaintiffs to take only their state law issues to the state court, the proper course under *England, supra*, 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440. Professor David Currie queried some years ago whether *Idlewild*, insofar as it rested on § 1291, would rule such a case. Federal Courts: Cases and Materials 803 (2d ed. 1975). More recently Professor Martha Field, after referring to *Idlewild*, has noted that "several abstention orders that the Supreme Court has reviewed have arguably been final decisions only because the abstaining court had referred all the issues in the case—federal as well as state—to the state judiciary" and hence "[t]he appellant was 'effectively out of court' in those cases to a greater degree than he would be" when the *England* procedure is used. *The Abstention Doctrine Today*, 125 U.Pa.L.Rev. 590, 592–93 (1977). We think these doubts are well taken and that, despite *Idlewild*, the abstention order here was not final.

■ Appellants' argument for jurisdiction under 28 U.S.C. § 1292(a)(1) has greater merit. Acknowledging as they must that the abstention order is not the *grant* of a temporary injunction, appellants contend that it is a *denial* of the temporary injunction which they sought. This is supported by a decision of our own circuit, *Weiss v. Duberstein*, 445 F.2d 1297, 1299 (2 Cir. 1971), although examination of the briefs shows that the issue was not developed there and the point was made in a single sentence of the opinion without supporting discussion.

The origin of the doctrine seems to be a statement in *Glen Oaks Utilities, Inc. v.*

*City of Houston*, 280 F.2d 330, 333 (5 Cir. 1960), which Judge Waterman had cited in *Idlewild*:

> The entry of the stay order, we think, was for all practical purposes, a denial of the temporary injunction which was sought.

The court, however, did not clearly state whether a preliminary injunction or merely a temporary restraining order had been requested or whether the abstention order was appealable under 28 U.S.C. § 1291 or 28 U.S.C. § 1292. The problem was discussed in a somewhat different context in *Mercury Motor Express, Inc. v. Brinke*, 475 F.2d 1086, 1090–91 (5th Cir. 1973), where the district court denied temporary injunctive relief and stayed further proceedings pending action by the ICC. The court of appeals held it had jurisdiction under 28 U.S.C. § 1292(a)(1) to review the denial of injunctive relief but explained that power to review the stay order was merely incidental to that independent jurisdictional basis since, unlike the *Glen Oaks* stay, the stay order in question did not "itself [have] the effect of denying the preliminary injunction." *Id.* at 1090 n. 6. See also *Clean Air Coordinating Comm. v. Roth-Adam Fuel Co.*, 465 F.2d 323, 325 (7 Cir. 1972), cert. denied, 409 U.S. 1117, 93 S.Ct. 895, 34 L.Ed.2d 701 (1973); compare *United States v. Lynd*, 301 F.2d 818, 822 (5 Cir.), cert. denied, 371 U.S. 893, 83 S.Ct. 187, 9 L.Ed.2d 125 (1962). In *Gray Line Motor Tours, Inc. v. City of New Orleans*, 498 F.2d 293, 298 (5 Cir. 1974), the court held that "a stay order which itself had the effect of denying a preliminary injunction would come under 1292(a)(1)", citing *Glen Oaks*.

In *Dellinger v. Mitchell*, 442 F.2d 782, 789–90 (D.C.Cir.1971), where no express application for temporary injunctive relief was made, Judge Leventhal recognized "There is logic in the position that a stay of an action for injunctive relief operates as a refusal of a temporary injunction" but thought that "[w]hether that is a sound result depends on a practical assessment of

the case" and that "[i]t counts against this conclusion [appealability] that the court's action did not even imply a preliminary assessment of the merits of the claim for injunctive relief, including the claim for irreparable injury." The ultimate conclusion was to reject appealability but to review by a prerogative writ, an approach having "the advantage of limiting the use of appellate recourse in response to stay orders, yet keeping the door open for the occasional case reflecting abuse of discretionary authority."

The question raised by these cases is not an easy one. Certainly in these days of crowded appellate dockets we would not wish to adopt a rule that whenever a temporary injunction was sought, a stay pending arbitration or resort to an administrative agency was appealable on the ground that in effect the court had denied a temporary injunction under § 1292(a)(1). Stays pending arbitration or consideration by an administrative agency are required by established rules of law; abstention is a matter of judicial discretion. Moreover, stays of the former sorts are generally of short duration and the issue will remain open for some further consideration in light of the arbitration award or the administrative determination (or sometimes the lack of one). Abstention may involve a delay of years, and the issues referred for state decision will have been determined with finality. While we are not free from doubt, we think we were correct in holding in *Weiss v. Duberstein, supra*, that when a temporary injunction has been sought and a stay has been granted to permit a state court to determine pertinent issues under *England*, the order operates as a denial of a temporary injunction and is thus appealable under § 1292(a)(1).[1]

### III.

Little needs to be added to the judge's opinion on the merits of his decision to abstain. However the New York courts decide whether § 678 prohibits a physician from accepting payments voluntarily made in excess of the approved fees, Dr. Goldberg's third cause of action, the void for vagueness claim, will be mooted. If the New York courts decide that physicians may accept such payments, Simoni's seventh cause of action (inability to obtain medical care of his choice) and both plaintiffs' ninth cause of action (restriction of right to enter into contracts) would likewise disappear. Should the New York courts find that Simoni had paid premiums for health insurance entitling him to services not now available but that appropriate refunds should be made, his claims under the contracts clause, Art. I, § 10, would be put to rest. Even as to other causes of action the frame of reference will be affected by authoritative decision of the state law claims.

The writer said some years ago, Federal Jurisdiction: A General View 93 (1973):

One type of case almost universally recognized as appropriate for abstention is that of a state statute, not yet construed by the state courts, which is susceptible of one construction that would render it free from federal constitutional objection and another that would not. A federal court should not place itself in the position of holding the statute unconstitutional by giving it the latter construction, only to find that the highest court of the state will render the decision futile and unnecessary by adopting the former. Such a decision not only is a waste of judicial resources but provokes a needless

---

1. While the denial of such a stay would not be appealable as such under § 1292(a)(1), the grant of a temporary injunction over a claim for abstention would of course be appealable.

   Professor Field favors "allowing review of decisions to abstain, as is the practice today, and clarifying the doctrinal basis for that review", *supra*, 125 U.Pa.L.Rev. at 600. She would make the clarification by calling abstention orders final judgments. For the reasons stated in text we agree, although without great enthusiasm, that a decision to abstain should be reviewable when a plaintiff has sought a temporary injunction which the stay in effect denies but, except in a case like *Idlewild*, we

collision between state and federal power.[2]

This case is precisely of that type.

Affirmed.

find no sufficient analytical basis for characterizing the judgment as reviewable under § 1291.

2. The statement was supported by citation of *Fornaris v. Ridge Tool Co.*, 400 U.S. 41, 43–44, 91 S.Ct. 156, 27 L.Ed.2d 174 (1970), and *Lake Carriers' Ass'n v. MacMullan*, 406 U.S. 498, 510–12, 92 S.Ct. 1749, 32 L.Ed.2d 257 (1972).

See also *Bellotti v. Baird*, 428 U.S. 132, 146–151, 96 S.Ct. 2857, 49 L.Ed.2d 844 (1976). Abstention in "construction" cases is generally approved by Professor Field in her elaborate study, Abstention in Constitutional Cases: The Scope of the *Pullman* Abstention Doctrine, 122 U.Pa.L.Rev. 1071, 1111–18 (1974).