ACTON CORPORATION, et al.,
Plaintiffs, Appellants,

v.

BORDEN, INC., Defendant, Appellee.

No. 81-1512.

United States Court of Appeals,
First Circuit.

Argued Dec. 8, 1981.

Decided Feb. 12, 1982.

John J. Curtin, Jr., Boston, Mass., with whom Joseph L. Kociubes, Philip W. Horton and Bingham, Dana & Gould, Boston, Mass., were on brief, for defendant, appellee.

Before COFFIN, Chief Judge, ALDRICH and BREYER, Circuit Judges.

BREYER, Circuit Judge.

Appellants seek review of a Massachusetts district court order that effectively stays their action (brought to compel arbitration) while an Ohio federal district court proceeds with a related case. We find that his order is not appealable. Treating the appeal as a petition for mandamus, we hold that the district court had adequate discretionary authority to enter the challenged order.

## I

The underlying dispute in this case concerns the value of certain assets that the appellee Borden bought from the appellant Acton in 1980. Borden claims that under the contract the purchase price should have been adjusted downward. Acton claims the price should have been adjusted upward. The contract sets forth a procedure for resolving this type of dispute. The dispute is to be arbitrated by Acton's accountant, Arthur Young & Co., and by Borden's accountant, Price Waterhouse & Co. If these two firms cannot agree, they are to select jointly a third firm of independent accountants which shall arbitrate the dispute. If they cannot agree upon a third firm, then a firm of independent accountants will be selected by lot.[1]

Borden and Acton both acknowledge that their accountants were unable to resolve the dispute. Borden claims, however, that the two accounting firms agreed upon a third firm, namely Arthur Andersen & Co.,

William A. Zucker, Boston, Mass., with whom Gerald A. Rosenthal and Gadsby & Hannah, Boston, Mass., were on brief, for plaintiffs, appellants.

1. Referring to disputes of the sort underlying this case, the contract provides:

    If such dispute is not resolved by . . . [Arthur Young & Co. and Price Waterhouse & Co.] within a period of ten (10) days, the dispute shall be submitted to another firm of independent auditors jointly selected by them, or, if they cannot agree upon such other firm,

    then to a firm of independent accountants selected by lot from among the six largest national accounting firms excluding Arthur Young & Co. and Price Waterhouse & Co. The determination of the dispute by the firm selected in accordance with the foregoing shall be conclusive and binding on Borden and Acton.

to arbitrate the dispute. Acton denies that the two accounting firms agreed upon a third firm as arbitrator, and it seeks the appointment of an arbitrator "by lot."

Federal court proceedings began on April 9, 1981, when Borden sued Acton in Ohio seeking rescission of the sale contract or damages based upon a host of alleged breaches. Among many other matters, the Ohio complaint demanded that, as to the valuation dispute, Acton "be compelled to abide by the determination of Arthur Andersen & Co." Two months later, on June 9, 1981, Acton filed a claim in the federal district court for Massachusetts under the Federal Arbitration Act, 9 U.S.C. § 4, seeking an order to compel arbitration before a "firm of independent accountants selected by lot." Acton sought a speedy determination of this claim, moving separately for "an order to show cause why the prayers to compel arbitration . . . should not be granted," and asking for a hearing within ten days. At the same time, Acton filed a motion in Ohio seeking a stay of those proceedings.

Ten days later, on June 19, 1981, Borden responded to Acton's stay motion in Ohio with a "Memorandum in Partial Support of [Acton's] Motion for Stay." In that document, Borden expanded upon the arbitration request in its Ohio complaint by asking the Ohio court either to confirm the selection of Arthur Andersen or to select another arbitrator by lot. And, on June 22 (the day set for hearing on Acton's motion in Massachusetts) Borden moved to stay the Massachusetts proceeding on the ground that the same issue was pending in Ohio.

On July 10, the Massachusetts district court granted Borden's motion for a stay and denied Acton's motion to compel arbitration immediately. The court reasoned that "where, as here, a motion which is in substance, if not in form, a motion to compel arbitration is pending in conjunction with a prior action, the interests advanced by the Arbitration Act would not be served by our proceeding summarily to trial" on the issue of whether there was a "failure, refusal or neglect" to arbitrate. 9 U.S.C. § 4. Acton has appealed from these Massachusetts district court determinations.

## II

We first consider whether the district court's two orders are appealable. In an initial order entered in this case in response to Borden's motion to dismiss the appeals, we noted that a final order under 9 U.S.C. § 4 is appealable. *See, e.g., New England Power Co. v. Asiatic Petroleum Corp.,* 456 F.2d 183, 188 (1st Cir. 1972); *John Thompson Beacon Windows, Ltd. v. Ferro, Inc.,* 232 F.2d 366, 367 (D.C.Cir.1956); 9 *Moore's Federal Practice,* ¶ 110.20[4.–1] at 246 & n.3 (2d ed. 1970). On this basis, we held that the district court's denial of Acton's motion to compel arbitration was appealable. We declined to pass at that time upon the separate appealability of the order staying proceedings.

■ Upon further consideration, we have concluded that we were wrong in finding that the district court's denial of Acton's arbitration motion was appealable.[2] This denial was not, as we had first believed, final. Rather, it was provisional. The dis-

**2.** In reversing our preliminary decision on the matter, we are aware that the "law of the case" doctrine often bars reconsideration of legal issues previously decided in the same case. *See White v. Higgins,* 116 F.2d 312 (1st Cir. 1940). The doctrine, however, is discretionary, *Cornelius v. Hogan,* 663 F.2d 330, 334 n.6 (1st Cir. 1981), and does not necessarily preclude us from overruling a decision once we are convinced it is erroneous. *Helms Bakeries v. Commissioner,* 263 F.2d 642 (9th Cir.), *cert. denied,* 360 U.S. 903, 79 S.Ct. 1285, 3 L.Ed.2d 1255, *rehearing denied,* 361 U.S. 857, 80 S.Ct. 44, 4 L.Ed.2d 96 (1959). In this instance, our initial decision was made in a preliminary order without benefit of full argument. Reconsideration so soon after the initial decision prejudices no one and does not significantly encourage the parties to relitigate legal issues once decided. Finally, courts have hesitated to apply the "law of the case" doctrine mechanically where, as here, the issue to be reconsidered is jurisdictional. *See Crane Co. v. American Standard, Inc.,* 603 F.2d 244, 248–49 (2d Cir. 1979); *Potomac Passengers Association v. Chesapeake & Ohio Railway,* 520 F.2d 91, 95 n.22 (D.C.Cir. 1975).

trict court made clear in its opinion that it simply did not wish to proceed "summarily" to trial.[3] The district court left itself free to return to Acton's basic complaint, if, for example, the Ohio court should choose not to resolve the factual and legal issues related to arbitration, or, if, say, the Ohio court, accepting Acton's version of the facts, should decide that the "lottery" to select the arbitrator ought to take place in Massachusetts.[4] Thus, the dismissal is not "final" and does not give rise to an appeal as of right under 28 U.S.C. § 1291.[5] Moreover, the practical effect of the order is simply to stay the Massachusetts proceedings. The appealability of the order should thus be governed by the same considerations that determine the appealability of the order granting Borden's request for a stay.

■ Ordinarily, a decision by a district court to stay litigation before it pending developments in a different action involving the same issues is not appealable. Such a highly discretionary "stay" decision, *Landis v. North American Co.*, 299 U.S. 248, 254–55, 57 S.Ct. 163, 165–166, 81 L.Ed. 153 (1936), is neither "final" nor equivalent to an "injunction." It thus provides no basis for an appeal under either § 1291 or § 1292(a). *Harmon-Kardon, Inc. v. Ashley Hi-Fi*, 602 F.2d 21, 22 (1st Cir. 1979); *Codex Corp. v. Milgo Electronic Corp.*, 553 F.2d 735, 737 (1st Cir. 1977); 9 *Moore's Federal Practice*, ¶ 110.20[4.–2] at 249, 250.

■ There are certain exceptions in the case law to this general rule of nonappealability. An examination of each of these exceptions suggests, however, that none of them applies here.

First, there are "collateral order" cases, which allow an appeal where there is an "important claim of right 'separable from, and collateral to' rights asserted in the main cause of action which may be lost if appellate consideration is delayed...." *New England Power Co. v. Asiatic Petroleum Corp.*, 456 F.2d at 185 (quoting *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 546, 69 S.Ct. 1221, 1225, 93 L.Ed. 1528 (1949)). We find this exception inapplicable because we find no important separable right likely to be lost. The only injury that inability to appeal can inflict upon Acton is the need to litigate the issues of arbitrability in a different federal court. Of course, litigation in a different forum can lead to the appointment of an arbitrator in a different district.[6] But, the contract between the parties does not specify where the arbitration is to be held—a fact indicating that the parties did not consider location of the arbitral forum important enough to make it

---

**3.** Moreover, it retained the case on its docket and did not pass at all upon "Count II" of Acton's two count complaint. "Count I," which the court "denied," consists of Acton's motion to compel arbitration; "Count II" asks the court to issue certain declaratory relief "in aid of arbitration." Had the court's denial of Acton's motion to compel been final, there would have been no reason to retain jurisdiction over "Count II," for a decision permanently refusing to order arbitration makes the relief sought in that count entirely irrelevant.

**4.** As it turns out, the Ohio court apparently did not decide the factual issue (whether or not Acton's accountant had agreed to the appointment of Arthur Andersen as arbitrator) underlying Acton's motion to compel arbitration. Rather, upon satisfying itself that the only issue then before it was whether to stay its own proceedings pending arbitration, and finding both parties in apparent agreement that a stay was appropriate, the Ohio court simply stayed its own proceedings.

Following the Ohio court's ruling, Acton moved to vacate the Massachusetts stay. This motion was denied in part upon the ground that pendency of this case on appeal deprived the district court of authority to grant the motion.

**5.** Nor is it appealable as the denial of an interlocutory injunction under 28 U.S.C. § 1292(a)(1). *See John Thompson Beacon Windows, Ltd. v. Ferro, Inc.*, 232 F.2d at 369, and discussion *infra* at p. 381.

**6.** "[U]pon being satisfied that the making of the agreement for arbitration [and] the failure to comply therewith [are] not in issue," section 4 of the Federal Arbitration Act directs the court to

order ... the parties to proceed to arbitration in accordance with the terms of the agreement. *The hearing and proceedings, under such agreement, shall be within the district in which the petition for an order directing such arbitration is filed.*

9 U.S.C. § 4 (emphasis added).

a contractually protected right. *Cf. Aaacon Auto Transport, Inc. v. Ninfo,* 490 F.2d 83, 84 (2d Cir. 1974). Moreover, we have found nothing in the Federal Arbitration Act or its history sufficient to convince us that "choice of forum," at least where not mentioned specifically in the contract, is an important enough interest to qualify for "collateral order" protection. *Cf. Piper Aircraft Co. v. Reyno,* —— U.S. ——, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981); *USM Corp. v. GKN Fasteners, Ltd.,* 574 F.2d 17, 20–21 (1st Cir. 1978); *New England Power Co. v. Asiatic Petroleum Corp.,* 456 F.2d at 185. Rather, in this instance, the interest in the speedy, efficient conduct of litigation— which here counsels against interlocutory appeals—outweighs the occasional need to correct speedily a district court decision banishing a litigant to an improper forum.

Second, appeals have sometimes been allowed from stays entered to permit state courts to consider potentially determinative issues of state law. *E.g. Druker v. Sullivan,* 458 F.2d 1272, 1274 n.3 (1st Cir. 1972). This case, however, involves neither the "delicate federalism considerations," *Harmon-Kardon, Inc. v. Ashley Hi-Fi,* 602 F.2d at 23, nor the unusually lengthy delays, *see Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction* § 3914 at 566 (1976), likely to be present when so-called "abstention" orders are at issue.

Third, there are a host of cases concerning the appealability of orders staying, or refusing to stay, arbitration proceedings themselves. *See, e.g., New England Power Co. v. Asiatic Petroleum Corp., supra; Lummus Co. v. Commonwealth Oil Refining Co., Inc.,* 280 F.2d 915 (1st Cir. 1960); *Lummus Co. v. Commonwealth Oil Refining Co., Inc.,* 297 F.2d 80 (2d Cir. 1961). We need not explore the complex holdings of these cases in depth, however, for the order appealed from in this case does not involve a decision about whether or not *arbitration* shall proceed. Rather, the decision here is simply that *court proceedings* to determine that question shall be held in abeyance while other similar *court proceedings* related to arbitration proceed.

Fourth, appeals have sometimes been allowed from stay orders entered in suits where a party has sought preliminary injunctive relief. *See, e.g., Goldberg v. Carey,* 601 F.2d 653 (2d Cir. 1979); *Glen Oaks Utilities, Inc. v. City of Houston,* 280 F.2d 330 (5th Cir. 1960). The theory seems to be that the stay operates as a denial of the preliminary relief sought, *see Goldberg v. Carey,* 601 F.2d at 657–58; *Glen Oaks Utilities, Inc. v. City of Houston,* 280 F.2d at 333, and is therefore appealable under 28 U.S.C. § 1292(a)(1) as the denial of an interlocutory injunction. This theory is inapplicable here, however, for courts have specifically written that a proceeding to compel arbitration under 9 U.S.C. § 4 is not a suit for "injunctive" relief; rather they have called it a suit for a "unique statutory remedy," *John Thompson Beacon Windows, Ltd. v. Ferro, Inc.,* 232 F.2d at 369; *Lummus Co. v. Commonwealth Oil Refining Co., Inc.,* 297 F.2d at 85. And, the "practical consequence" of applying this exception here, *cf. Goldberg v. Carey,* 601 F.2d at 657–58, would be to reverse in "section 4" cases the general presumption against stay appealability. We have found no good reason for doing so.

Finally, appeals are sometimes allowed from stay orders that effectively terminate the actions in which they are granted. *See, e.g., Amdur v. Lizars,* 372 F.2d 103, 105–06 (4th Cir. 1967); *In re Mercury Construction Corp.,* 656 F.2d 933, 938 n.6 (4th Cir. 1981). *Amdur,* however, (which *Mercury* cites) apparently rests its holding upon the court's concern that the stay deprived the federal plaintiff of any opportunity to have his claim heard on the merits. *But see Wright, Miller & Cooper, supra,* § 3914, 564 n.75. If so, it is inapplicable here. Acton can have its claims decided in Ohio, or, failing that, the Massachusetts court stands ready to revive them. If, on the other hand, *Mercury* (or *Amdur*) finds "effective dismissal" in the fact that the merits are likely to be decided by the "proceeding" court rather than the "staying" court, we choose not to follow it. Since the very purpose of this type of stay is to allow a different court first to decide central, and perhaps determi-

native, issues, any such rule would seriously undermine the presumption against appealability of stay orders, with consequent delays in litigation.

In sum, we believe that the orders entered in this case—neither of which amounted to more than a stay of the proceedings—are not appealable.

## III

■ Although Acton's appeals are not properly before us, Acton suggests that we treat its appeal as a petition for mandamus. Acton likely would have filed an express petition for mandamus had it not believed, due to our prior order, that at least one of its appeals was proper. We therefore treat these appeals as petitions for mandamus under the All Writs Act, 28 U.S.C. § 1651(a). *United States v. Sorren*, 605 F.2d 1211, 1215 (1st Cir. 1979). *Cf. Aaacon Auto Transport, Inc. v. Ninfo, supra.*

■ Mandamus is suitable as a remedy, however, only in "extraordinary situations." *Kerr v. United States District Court*, 426 U.S. 394, 402, 96 S.Ct. 2119, 2123, 48 L.Ed.2d 725 (1976). It "has traditionally been used in the federal courts only 'to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so.'" *Will v. United States*, 389 U.S. 90, 95, 88 S.Ct. 269, 273, 19 L.Ed.2d 305 (1967) (quoting *Roche v. Evaporated Milk Association*, 319 U.S. 21, 26, 63 S.Ct. 938, 941, 87 L.Ed. 1185 (1943)). Although the use of mandamus has not been limited by "an unduly narrow and technical understanding of what constitutes a matter of 'jurisdiction,'" *Kerr v. United States District Court*, 426 U.S. at 402, 96 S.Ct. at 2123 (citing *Will v. United States*, 389 U.S. at 95, 88 S.Ct. at 273), it is well-settled that "only exceptional circumstances amounting to a judicial 'usurpation of power' will justify the invocation of this extraordinary remedy." *Will v. United States*, 389 U.S. at 95, 88 S.Ct. at 273; *Debeers Consol. Mines, Ltd. v. United States*, 325 U.S. 212, 217, 65 S.Ct. 1130, 1132, 89 L.Ed. 1566 (1945); *In re Arthur Andersen & Co.*, 621 F.2d 37, 38–39 (1st Cir.

1980). The party seeking mandamus has "the burden of showing that its right to issuance of the writ is 'clear and indisputable.'" *Bankers Life & Cas. Co. v. Holland*, 346 U.S. 379, 384, 74 S.Ct. 145, 148, 98 L.Ed. 106 (1953) (quoting *United States v. Duell*, 172 U.S. 576, 582, 19 S.Ct. 286, 287, 43 L.Ed. 559 (1899)). *See Kerr v. United States District Court*, 426 U.S. at 403, 96 S.Ct. at 2124; *USM Corp. v. GKN Fasteners, Ltd.*, 574 F.2d at 23. It is plain to us that Acton has failed to satisfy that burden here.

■ Borden's Ohio action contained a demand that Acton be compelled to abide by a decision of Arthur Andersen. Acton's later suit in Massachusetts sought to compel arbitration with an arbitrator selected by lot. The claims in the two suits were overlapping (in that the parties each sought arbitration) but not identical (in that each party sought arbitration with a different arbitrator). Both suits, however, fairly raised the issue of whether or not Acton's accountant had agreed to the appointment of Arthur Andersen. That issue had to be decided before either court could order arbitration. To avoid duplication of effort and potentially inconsistent judgments, it stands to reason that one of the two courts should defer to the other. *See Kerotest Mfg. Co. v. C-O-Two Fire Equipment Co.*, 342 U.S. 180, 183–84, 72 S.Ct. 219, 221, 96 L.Ed. 200 (1952); *Washington Metropolitan Area Transit Authority v. Ragonese*, 617 F.2d 828 (D.C.Cir.1980); *Small v. Wageman*, 291 F.2d 734 (1st Cir. 1961). *Cf. Landis v. North American Co.*, 299 U.S. 248, 254, 57 S.Ct. 163, 165, 81 L.Ed. 153 (1936).

Acton claims the district court in this case lacked the power to stay its proceedings to allow the arbitration issues to be decided in Ohio. Acton points to the language of the statute, 9 U.S.C. § 4, providing that "the court *shall* hear the parties" and, "[i]f the making of the arbitration agreement or the failure, neglect or refusal to perform the same be in issue, ... *shall proceed summarily* to trial thereof." Acton claims that this language, in conjunction with the permission § 4 grants a party to bring a petition in "any United States dis-

trict court" that would have jurisdiction over the subject matter of a suit involving the controversy between the parties, makes the petitioner's choice of forum "conclusive."

We reject Acton's argument for it proves too much. On its theory, if many different parties in a complex litigation brought a § 4 proceeding, each in a different district, each district would have to proceed to decide the merits of the action despite the resulting duplication, inconsistency and confusion. No policy underlying the Federal Arbitration Act compels any such result. Indeed, we find no evidence that Congress felt petitioners' "choice of forum" so important in § 4 cases that it intended a major departure from the ordinary rule allowing one federal court to stay litigation when another federal court is in the process of deciding the same issue. The mandatory language of § 4 refers to a petitioner's right to substantive relief. It does not address the problem of stays or duplicative litigation.

The cases relied upon by Acton are not to the contrary. In *Aaacon Auto Transport, Inc. v. Ninfo, supra,* the Second Circuit stated that a New York district court "lacked the power" to transfer a § 4 suit to a more convenient federal forum in Wisconsin. The Second Circuit's decision, however, rested not only on the fact that "the petition [for arbitration] was filed in ... New York," but also on the fact that the underlying contract "on its face provides for arbitration in New York...." *Id.* at 85. Even if the Second Circuit, in its *per curiam* opinion, meant to do more than suggest the district court had abused its discretion, the decision's rationale does not apply here, for the underlying contract does not identify an arbitral forum. *In re Mercury Construction Corp., supra,* involved an appeal from a stay of federal court litigation pending state court determination of the issue of arbitrability—an issue that was also before the federal court. Nothing in that opinion suggests that a district court lacks *power* to stay § 4 proceedings in an appropriate case. Moreover, the Fourth Circuit holding rested heavily upon a discussion of the relationship between state and federal courts—a matter

not relevant here. Finally, in *Lawn v. Franklin,* 238 F.Supp. 791 (S.D.N.Y.1971), there is no discussion of a district court's *power* to stay § 4 proceedings. Indeed, insofar as the power of a district court to determine the forum in which an issue should be litigated is discussed at all, the court suggests that it *had* such power. *See id.* at 793.

Acton goes on to argue that arbitration in Ohio will be less fair than arbitration in Massachusetts because Borden's economic dominance in the area might affect the arbitrator. Acton also points out that, although Borden filed the Ohio action before Acton filed the Massachusetts action, Acton was the first formally to request any court to order arbitration. These factors, however, are properly considered by the court below when exercising its sound discretion as to which federal district court ought to decide the "arbitration clause" issues. The court's resulting judgment did not abuse that discretion.

*For these reasons, the appeal is dismissed for lack of jurisdiction. Treating the appeal as a petition for mandamus, the petition is denied.*