926 F.2d 890
 James A. PRIVITERA, M.D., Plaintiff-Appellant,
v.
CALIFORNIA BOARD OF MEDICAL QUALITY ASSURANCE; Kenneth
Wagstaff, as Executive Director of the California
Board of Medical Quality Assurance,
Defendants-Appellees.
 No. 89-55981.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Nov. 6, 1990.
Decided Feb. 25, 1991.
 
 John A. Dito, Buchalter, Nemer, Fields & Younger, Los Angeles, Cal., for plaintiff-appellant.
 Helena Whalen-Bridge, Deputy Atty. Gen., Los Angeles, Cal., for defendants-appellees.
 Appeal from the United States District Court for the Central District of California.
 Before NORRIS, HALL and RYMER, Circuit Judges.
 RYMER, Circuit Judge:
 
 
 1
 James Privitera, M.D. brought this action for injunctive relief under the Civil Rights Act, 42 U.S.C. Sec. 1983, challenging a California Board of Medical Quality Assurance (BMQA) license revocation proceeding against him. He now appeals an order of the district court that denied his motion for preliminary injunction, dismissed pendent claims for declaratory relief and to compel arbitration, and stayed the action pending resolution of the state claims in state court.[1] We reverse and remand.
 
 
 2
 * Privitera is a medical doctor licensed to practice in California. He was convicted in 1975 of conspiracy to sell and prescribe laetrile to cancer patients. Privitera appealed his conviction, but the California Supreme Court ultimately affirmed. In 1982, the governor granted him a full pardon. In 1977, while Privitera was appealing his laetrile conviction but before he was pardoned, BMQA began an accusation proceeding to revoke his license. In 1980, he entered into a settlement with BMQA that required him to be on probation for ten years.
 
 
 3
 Privitera claims that during this period of probation BMQA began an active campaign to harass him. In support of this claim, he alleges the following facts: First, his surveillance officer pressured him into buying a cow from his daughter for $2500 and tried to pressure him into buying a second cow. Then in 1984, a patient of Privitera's had an insurance dispute about Privitera's treatment, and when the executive director of BMQA learned of the dispute, he wrote: "This looks good. Maybe it's another chance to nail this Privitera." Privitera's surveillance officer falsely presented himself to the patient as an insurance investigator to get her to release her records.
 
 
 4
 Later BMQA sent an agent, posing as a patient, to see Privitera, and she signed a form stating she was not an agent. That same form called for arbitration of any dispute. Based on the agent's visit, BMQA instituted the present accusation proceeding to revoke Privitera's probation and to revoke his license.
 
 
 5
 After that, Privitera told BMQA that if the proceeding were not stopped he would publicize the cow incidents. The proceeding went forward, and he did hold a press conference. Privitera was then charged with extortion, but the charge was dismissed at the preliminary hearing. The judge noted that "one gets the sense of discriminatory prosecution on the part of the D.M.Q. [sic] or whomever in the state hierarchy is pressing these charges."
 
 
 6
 Privitera's complaint seeks to enjoin the revocation proceeding, which he alleges represents the culmination of a pattern of unjust harassment in violation of his federal constitutional rights. Claims are also set forth to compel arbitration pursuant to the agreement signed by the BMQA agent, and for a declaration that Privitera's probationary status, and therefore the attempt to revoke his license, is illegal.
 
 
 7
 Privitera moved for preliminary injunction, and BMQA moved to dismiss the claim on the grounds of Younger abstention,[2] among other things. The district court dismissed the pendent claims without prejudice under United Mine Workers v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); denied the motion to dismiss and for preliminary relief; and stayed the federal action, removing it from the active calendar, pending resolution of the state issues in state court because they would either moot the constitutional issues or impact their disposition.
 
 II
 
 8
 First, we must determine whether the district court's stay order is appealable at this time. There is no dispute that the portion of the order denying Privitera's motion for preliminary injunction is appealable under 28 U.S.C. Sec. 1292(a)(1), which provides for appeals of "[i]nterlocutory orders of the district courts ... granting, continuing, modifying, refusing or dissolving injunctions." Privitera asserts that the stay aspect of the order is appealable as a final order under Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 10 n. 11, 103 S.Ct. 927, 934 n. 11, 74 L.Ed.2d 765, 776 n. 11 (1983), because he is effectively "out of court," and alternatively that it is appealable as the grant or denial of an injunction under Sec. 1292(a)(1). BMQA argues that the stay order is not a final order under Sec. 1291 because the district court retained jurisdiction of the federal Civil Rights claims and Privitera is therefore not effectively out of court on those claims.
 
 
 9
 Under the unique circumstances of this case, we conclude that the portion of the order staying the action is appealable under 28 U.S.C. Sec. 1292(a)(1). To hold otherwise would mean that the denial of the preliminary injunction would be effectively unappealable because a reversal on that issue would have no effect. Our mandate would return to a black hole. A stay should not insulate the denial of a request for preliminary injunction from appellate review in this way. For this reason, the denial of the preliminary injunction and the stay must be considered together.
 
 
 10
 Cases interpreting Sec. 1292(a)(1) indicate that we are to take a pragmatic approach to determining appealability under this section. The Supreme Court has held that an order, even if it does not directly rule on an injunction, is appealable under Sec. 1292(a)(1) if it has the "practical effect of refusing an injunction," and if it "might have 'serious, perhaps irreparable consequence,' and ... can be 'effectually challenged' only by immediate appeal." Carson v. American Brands, Inc., 450 U.S. 79, 84, 101 S.Ct. 993, 996, 67 L.Ed.2d 59, 64 (1981); see also Gulfstream Aerospace Corp. v. Mayacamas Corp., 485 U.S. 271, 287-88, 108 S.Ct. 1133, 1142-43, 99 L.Ed.2d 296, 312 (1988) (reaffirming the standard in Carson ).
 
 
 11
 In Carson, the Court held that a district court's order refusing to enter a consent decree was immediately appealable. The proposed decree would have permanently enjoined an employer from discriminating against black employees and would have implemented several major changes in the employer's hiring system. Appeal under Sec. 1292(a)(1) was justified because the order might deprive the employees of their opportunity to settle the case on the terms negotiated, and the employees alleged that they would suffer irreparable injury unless they received injunctive relief at the earliest opportunity. Under these circumstances, requiring the parties to go forward with the litigation had the practical effect of refusing injunctive relief which might have serious, perhaps, irreparable consequence and could be effectually challenged only by immediate appeal.
 
 
 12
 In an earlier case applying similar reasoning, the Fifth Circuit held that a stay was immediately appealable under 28 U.S.C. Sec. 1292(a)(1) when the plaintiff sought injunctive relief. Goldberg v. Carey, 601 F.2d 653 (5th Cir.1979). There, the plaintiff had requested a temporary injunction, and the district court abstained to allow state court resolution of state law issues. Recognizing the potential delay of years inherent in the abstention order, the court held that "when a temporary injunction has been sought and a stay has been granted to permit a state court to determine pertinent issues under England, the order operates as a denial of a temporary injunction and is thus appealable under Sec. 1292(a)(1)." Id. at 658; see also Moses v. Kinnear, 490 F.2d 21, 24 (9th Cir.1974) (stay pending plaintiff's exhaustion of state remedies immediately appealable as the denial of an injunction when plaintiff sought injunctive relief).
 
 
 13
 As a practical matter in this case, the stay order amounts to the same thing as denial of an injunction because equitable relief is sought only on the Civil Rights claims, and if those claims are not allowed to go forward, there is no way Privitera can seek to stop the license revocation proceeding. The effect is twofold. First, having to initiate a state court action to determine the pendent claims when no such action is currently pending could delay indefinitely the ultimate resolution of Privitera's claim for injunctive relief. Secondly, and of greater significance is the fact that both the stay and the denial of injunctive relief have the effect in this case of denying the injunction. The district court denied Privitera's request for preliminary injunction in part on the ground that the hearing was three months away and on that account he had failed to show irreparable injury. The stay would preclude his renewing the request as the hearing got closer and his injury, arguably more immediate.[3] Therefore, either part of the order, if left in place, would deny preliminary relief.
 
 
 14
 The second part of the Carson test is also met. Carson requires that to be immediately appealable, the order have "serious, perhaps irreparable, consequence" that cannot be effectually challenged except by immediate appeal. 450 U.S. at 84, 101 S.Ct. at 999, 67 L.Ed.2d at 64. In that case plaintiffs alleged they would suffer irreparable injury unless they obtained injunctive relief restructuring defendants' transfer and promotional policies. Because they could not obtain that relief until the proposed consent decree was entered, delay in reviewing the district court's refusal to enter the decree sufficed to meet the test. In this case Privitera does not in terms allege irreparable injury, but claims that systematic harassment and prosecution of the license revocation proceeding in bad faith violates his constitutional rights. If these allegations are proved and the hearing would be the last step in the process, denial of preliminary relief and the impossibility of a trial on the merits before the hearing is held could amount to irreparable injury.[4] The stay could not effectively be reviewed on appeal from a final judgment because the hearing would already have occurred. That would be a sufficiently serious consequence to warrant our concluding that the stay order is immediately appealable along with denial of the request for preliminary relief.
 
 
 15
 Because in the circumstances the stay order has the practical effect of permitting the revocation hearing to be held and therefore of denying Privitera's request for injunctive relief, and because this is a serious consequence which can only be challenged by immediate appeal, we conclude that both the denial of the preliminary injunction and the stay are appealable under 28 U.S.C. Sec. 1292(a)(1). In light of this conclusion, it is unnecessary to decide whether the stay is also a final order for purposes of Sec. 1291.
 
 III
 
 16
 Privitera next argues on the merits of the issue that the district court improperly stayed the federal action. He contends that the order effectively requires exhaustion of state administrative and judicial remedies when that is not required under 42 U.S.C. Sec. 1983, deprives him of the choice of forum to which he is entitled as a Sec. 1983 claimant, and amounts to abstention even though the district court recognized that no abstention doctrine applies.
 
 
 17
 The district court stayed the action for two reasons: first, should Privitera prevail on either of his pendent claims for an order compelling arbitration or a declaration that his probationary status is illegal, he would possibly receive all of the relief sought in the federal action and his constitutional claims would be moot; and alternatively, a decision favoring BMQA on those claims would impact the court's ruling on the federal constitutional issues raised in the complaint. The district court also noted there was no longer any need for immediate federal intervention since the license revocation hearing would not be held for several months. At the same time, the court denied BMQA's motion to dismiss on abstention grounds, finding that abstention under Burford v. Sun Oil Co., 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), was not appropriate because appeals of BMQA decisions are not concentrated in one court, and Younger abstention did not apply because of a recognized exception which precludes abstention where the state proceeding is brought in bad faith or for harassment. Younger v. Harris, 401 U.S. at 49, 91 S.Ct. at 753, 27 L.Ed.2d at 678-79. The court found that Privitera made a sufficient showing of bad faith or harassment to invoke the exception.
 
 
 18
 The district court correctly recognized that its decision to stay the federal issues could not be compelled by notions of exhaustion, Felder v. Casey, 487 U.S. 131, 146-47, 108 S.Ct. 2302, 2311, 101 L.Ed.2d 123, 143-44 (1988); Patsy v. Board of Regents, 457 U.S. 496, 516, 102 S.Ct. 2557, 2568, 73 L.Ed.2d 172, 188 (1982). However, if a court inappropriately abstains, "[t]he practical effect of abstention ... may be to impose an exhaustion requirement not appropriate to 42 U.S.C. Sec. 1983." Pearl Inv. Co. v. City and County of San Francisco, 774 F.2d 1460, 1463 (9th Cir.1985), cert. denied, 476 U.S. 1170, 106 S.Ct. 2891, 90 L.Ed.2d 978 (1986). Therefore it is necessary to determine whether the district court improperly abstained.
 
 
 19
 Although the district court did not treat its order to stay the action and remove it from the active calendar as abstaining, the stay amounts to abstention because it surrendered federal jurisdiction for an indefinite period to defer to a state court's judgment. On appeal, the standard of review for abstention orders is abuse of discretion. Almodovar v. Reiner, 832 F.2d 1138, 1140 (9th Cir.1987). However, "[i]n abstention cases, 'discretion must be exercised within the narrow and specific limits prescribed by the particular abstention doctrine involved.' " American Int'l Underwriters v. Continental Ins. Co., 843 F.2d 1253, 1256 (9th Cir.1988) (quoting C-Y Development Co. v. City of Redlands, 703 F.2d 375, 377 (9th Cir.1983) ). "[U]nless certain exceptional circumstances are present, a district court has little or no discretion to abstain.... Whether these requirements were met ... is ... reviewed de novo." Almodovar, 832 F.2d at 1140.
 
 
 20
 We turn, then, to whether the stay meets the requirements of an established abstention doctrine. Under Younger, a federal court will decline to enjoin a state proceeding out of concerns for comity and federalism. Having found the bad faith exception applicable, the district court clearly did not act on this basis. In Burford, the Court held that a federal court should have abstained from determining the validity of an agency decision when the state had established an elaborate administrative scheme, with judicial review concentrated in one county's courts to ensure uniformity in the particularly complex area of oil and gas regulation. The district court correctly recognized that deciding this case would not interfere with any similar effort by California to maintain consistency in a complex area of law because California had not established any such system of concentrated judicial review. A district court invoking either Younger or Burford abstention would simply decline to decide the case, not postpone its decision as was done here.
 
 
 21
 The district court's justification for the stay--that the state court litigation could effectively moot the federal claims so that adjudicating the constitutional issues could thus be avoided--sounds most like Pullman abstention, but does not meet its criteria. In Railroad Comm'n v. Pullman Co., 312 U.S. 496, 501, 61 S.Ct. 643, 645, 85 L.Ed. 971 (1941), the Supreme Court established the principle that a federal court can use its discretion to abstain from deciding a constitutional claim if resolution of state law issues might mean that "the constitutional issue does not arise." The purposes of Pullman abstention are said to be to "avoid both unnecessary adjudication of federal questions and 'needless friction with state policies....' " Hawaii Housing Auth. v. Midkiff, 467 U.S. 229, 236, 104 S.Ct. 2321, 2327, 81 L.Ed.2d 186, 194 (1984) (quoting Pullman ).
 
 
 22
 We have formulated the elements of Pullman abstention as follows:
 
 
 23
 (1) The complaint "touches a sensitive area of social policy upon which the federal courts ought not to enter unless no alternative to its adjudication is open."
 
 
 24
 (2) "Such constitutional adjudication plainly can be avoided if a definitive ruling on the state issue would terminate the controversy."
 
 
 25
 (3) The possibly determinative issue of state law is doubtful.
 
 
 26
 Canton v. Spokane School Dist. No. 81, 498 F.2d 840, 845 (9th Cir.1974) (quoting Pullman ).
 
 
 27
 The district court's order fails to meet the first prong of the Canton test because whether Privitera was harassed does not touch a sensitive area of social policy. Deciding his constitutional claim would not affect any social policy; it would only affect him and the defendants in this case. It is unclear with respect to the second prong that a state court decision on whether to compel arbitration or declare that part of the proceeding having to do with Privitera's probationary status unlawful would terminate the controversy so that resolution of the federal constitutional issues can be avoided. Whether Privitera wins or loses on either cause of action, the BMQA proceeding can continue and so can its alleged harassment and bad faith prosecution.[5] Thus, adjudication of the constitutional issues would not plainly be avoided, even though they possibly could go away.
 
 
 28
 Moreover, the general principles of Pullman abstention do not support the stay in this case. The usual situation for Pullman abstention is that of the leading case itself: A state statute is challenged as unconstitutional and abstention permits the state courts to interpret it so as possibly to avoid unconstitutionality. See, e.g., Almodovar v. Reiner, 832 F.2d 1138 (9th Cir.1987) (statutes are susceptible to limiting construction). In this case, however, Privitera is not challenging a state statute. Instead, his constitutional claim is highly individualized, based on personal harassment by certain state officials. No law needs interpreting before the federal court can decide if his constitutional rights have been violated.
 
 
 29
 The district court's order similarly fails to meet the criteria for staying a federal proceeding under Colorado River Water Conservation District v. United States, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). The purpose of a Colorado River stay is to avoid duplicative litigation, which is "unrelated to considerations of proper constitutional adjudication." Id. at 817, 96 S.Ct. at 1246, 47 L.Ed.2d at 498. It involves situations in which there is a concurrent state proceeding and wise judicial administration dictates staying the federal action in light of certain exceptional circumstances. Id. at 817-18, 96 S.Ct. at 1246, 47 L.Ed.2d at 498. Here, no state court action was pending, and the district court gave no indication that its purpose was to avoid duplicative litigation. Therefore, a Colorado River analysis also fails to justify the stay. See Herrington v. County of Sonoma, 706 F.2d 938, 939-40 (9th Cir.1983) (Colorado River abstention not justified when state court action was not at an advanced stage because presence of state proceeding in no way wasted judicial resources).
 
 
 30
 The stay is thus not supported by any of the established principles underlying federal court abstention. It did not serve the purpose of allowing a state to interpret its own laws, nor did it serve the purpose of avoiding duplicative litigation. Instead, it simply allowed the district court to postpone, and possibly avoid, having to adjudicate the case.
 
 
 31
 BMQA seeks to justify the stay on the ground that, since dismissal of the pendent state claims was proper under United Mine Workers, retention of the federal claims on the active calendar would have been an inappropriate use of judicial resources. However, in light of the "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them," Colorado River, 424 U.S. at 817, 96 S.Ct. at 1246, 47 L.Ed.2d at 498, the mere fact that the state law claims could decide the case is not enough to justify abstention. A federal court may not simply refuse to adjudicate federal claims any time an alternative state law theory is available to the plaintiff.
 
 
 32
 BMQA also argues that the order staying resolution of the federal claims was within the court's discretion to control its docket and is thus within the mandate of Fed.R.Civ.P. 1 to secure the just, speedy, and inexpensive determination of actions. While we surely endorse effective management of crowded calendars, BMQA points to no authority permitting a district court to put a federal constitutional case that seeks injunctive relief on hold, pending resolution of state causes of action which have not yet been filed, whose disposition will not plainly dispose of the need to reach the constitutional issues, and when the requirements for abstention are not met. It is not necessary to say--and we should not be interpreted as implying--that a stay for sound reasons of judicial administration and fairness and savings to the parties is never appropriate. We are simply obliged to hold in this case that this stay was not providently imposed.
 
 
 33
 We therefore reverse the portion of the district court's order staying the federal action.
 
 IV
 
 34
 Finally, we consider whether the district court erred in denying Privitera's motion for preliminary injunction. "Appellate review of a decision to grant or deny a preliminary injunction is restricted to determining whether the lower court abused its discretion or based its decision on an erroneous legal standard or clearly erroneous findings of fact. Unless a district court incorrectly applies the law, its grant or denial of a motion for a preliminary injunction is subject to very limited review." Sierra Club v. Marsh, 816 F.2d 1376, 1382 (9th Cir.1987) (citation omitted). Privitera argues that this court should expand its review in this case because the district court incorrectly applied the law by abstaining. However, as we read the order, the stay decision had nothing to do with the decision on the merits of the claim for injunctive relief, so the error in staying the action should not affect the standard of review for the preliminary injunction.[6]
 
 
 35
 To obtain a preliminary injunction, the moving party must demonstrate "either (1) a combination of probable success on the merits and the possibility of irreparable injury, or (2) that serious questions are raised and the balance of hardships tips sharply in its favor." Chalk v. United States Dist. Court, 840 F.2d 701, 704 (9th Cir.1988). The district court concluded that Privitera had not met this burden because he had failed to demonstrate irreparable injury since the license revocation hearing would not take place for several months, and he had not demonstrated a likelihood of success on the merits or that the balance of hardships tipped sharply in his favor.
 
 
 36
 The district court correctly stated the rule of law relating to preliminary injunctions, so the only questions are whether it abused its discretion in applying the standard or whether it based its conclusions on clearly erroneous findings of fact. Because of the order's brevity we may misapprehend the district court's reasoning. However, we are troubled by apparent inconsistencies in the findings and conclusions, and believe that the court's determination on irreparable injury may suffer a fatal defect. For these reasons we conclude that it would be appropriate on remand for the court to take another look at the request for injunctive relief. In so doing, we again emphasize that we have no view on the merits of Privitera's motion; we vacate the order and remand solely to give the district court an opportunity to consider the matter afresh, in light of some of the difficulties we see.
 
 
 37
 For example, in ruling on irreparable injury the district court apparently relied on the fact that the hearing was three months away. Courts generally do look at the immediacy of the threatened injury in determining whether to grant preliminary injunctions. See, e.g., Caribbean Marine Servs. Co. v. Baldridge, 844 F.2d 668, 674 (9th Cir.1988) ("a plaintiff must demonstrate immediate threatened injury as a prerequisite to preliminary injunctive relief"). Such an immediacy requirement is reasonable when an ongoing activity is to be enjoined because the need for immediate relief must be great enough to outweigh the hardship to the defendant.
 
 
 38
 But in this case, it would have made no difference if the hearing had been preliminarily enjoined at the time of the district court's order or two months later. The hearing was and is a future event, and it is either enjoinable or it is not. Denying the preliminary injunction for this reason required Privitera to bring the motion again later, simply delaying resolution of a question which could just as easily have been resolved at the time. Thus, the district court's reliance on the timing of the hearing was misplaced.
 
 
 39
 In considering the other side of the continuum, the court summarily stated that Privitera had demonstrated neither a likelihood of success on the merits nor that the balance of hardships tipped sharply in his favor. It gave no further explanation of those findings. However, to conclude that Privitera had not shown likely success on the merits or raised a serious question seems inconsistent with the other portion of the order in which the judge concluded that Privitera had produced sufficient facts to invoke the bad faith or harassment exception to Younger. Privitera's whole claim for relief is based on the alleged violation of his constitutional rights because of BMQA's discriminatory or harassing prosecution. Without further explanation, it is difficult to see how Privitera has failed to demonstrate any likelihood of success on the merits if he has in fact shown that the BMQA proceeding was brought in bad faith or for harassment.
 
 
 40
 It is similarly difficult to see how Privitera has failed to demonstrate any possibility that the balance of hardships could tip in his favor, if he has succeeded in demonstrating that the BMQA proceeding is a bad faith prosecution. The Court in Younger suggested that a prosecution brought in bad faith or for harassment could cause irreparable injury sufficient to justify an injunction. The Court held that "[c]ertain types of injury, in particular, the cost, anxiety, and inconvenience of having to defend against a single criminal prosecution, could not by themselves be considered 'irreparable' in the special legal sense of that term." 401 U.S. at 46, 91 S.Ct. at 751, 27 L.Ed.2d at 676-77. But in so holding, it specifically distinguished cases in which the prosecution was brought in bad faith: "These circumstances, as viewed by the Court sufficiently establish the kind of irreparable injury, above and beyond that associated with the defense of a single prosecution brought in good faith, that had always been considered sufficient to justify federal intervention." Id. at 48, 91 S.Ct. at 752, 27 L.Ed.2d at 678.[7]
 
 
 41
 In light of this language, the district court's conclusion that Privitera had failed to address irreparable injury or demonstrate any hardship, seems inconsistent with the conclusion that he had demonstrated bad faith. This inconsistency suggests that the grounds for a preliminary injunction, aside from the timing of the hearing, may not have been fully considered. Again, we intimate no view on the outcome of the analysis, but rather believe that a balancing must take place in consideration of Younger and its progeny.
 
 
 42
 Because it was error to rely solely on the fact that the hearing was three months off, we hold that the district court abused its discretion in denying the preliminary injunction primarily on that basis. We therefore reverse, vacate the order and remand to give the district court an opportunity to reconsider Privitera's motion for preliminary injunction without reference to the imminence of the BMQA hearing and with reference to applicable legal standards for the type of irreparable injury that Privitera asserts.
 
 
 43
 REVERSED, VACATED and REMANDED.
 
 
 
 [1]
 Although his statement of issues for review raises only the question whether the district court erred in staying the federal claims, Privitera argues that he met the requirements for a preliminary injunction and that it should have been granted as well. He does not appeal dismissal of the pendent claims
 
 
 [2]
 Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971)
 
 
 [3]
 Although we have difficulty with the district court's conclusion on this point, see infra 897, it nevertheless was part of its order and compounds the effect of the stay in this case
 
 
 [4]
 See Younger, 401 U.S. at 48, 91 S.Ct. at 752, 27 L.Ed.2d at 678, and discussion infra 898
 
 
 [5]
 We emphasize that we express no view on the merits of Privitera's claims
 
 
 [6]
 The order is ambiguous in the respect Privitera argues. It states, "there is no indication at this time that plaintiff will succeed on the merits, or that the balance of hardships tips sharply in his favor." (Emphasis added.) It is possible that the court was finding that, because resolution of the state claims would be necessary in order to determine likelihood of success on the merits, and he had stayed the federal claims to which the request for injunctive relief is attached, it was not possible for Privitera to make a showing "at this time." To the extent that reading is accurate, it would implicate the doctrine of exhaustion of remedies and would not be appropriate in a Sec. 1983 case. See supra, 894
 
 
 [7]
 While the Ninth Circuit has not addressed this issue, the Fifth Circuit has held that "[a] showing of bad faith or harassment is equivalent to a showing of irreparable injury under Younger, and irreparable injury independent of the bad faith prosecution need not be established." Fitzgerald v. Peek, 636 F.2d 943, 944 (5th Cir.), cert. denied, 452 U.S. 916, 101 S.Ct. 3051, 69 L.Ed.2d 420 (1981). In that case, the court affirmed an injunction against a state court prosecution, holding that "[a] bad faith showing of this type will justify an injunction." Id. at 945; see also Bishop v. State Bar of Texas, 736 F.2d 292, 294 (5th Cir.1984) (holding that "irreparable injury under Younger is established by a sufficient showing of retaliatory or bad faith prosecution, and a federal injunction may issue" against a state bar association's disciplinary proceeding)