John **GARAMENDI,** Insurance Commissioner of the State of California, in his capacity as Liquidator of Mission Insurance Company, Mission National Insurance Company, Enterprise Insurance Company, Holland–America Insurance Company and Mission Reinsurance Corporation, as successor to Roxani Gillespie, Insurance Commissioner of the State of California, in her capacity as Liquidator of Mission Insurance Company, Mission National Insurance Company, Enterprise Insurance Company, Holland–America Insurance Company and Mission Reinsurance Corporation, Plaintiff–Appellee,

v.

**ALLSTATE INSURANCE COMPANY,** Defendant–Appellant,

and

**Insurance Company of North America, Defendant.**

No. 91–55855.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 5, 1993.

Decided Feb. 2, 1995.

Joseph D. Lee, Munger, Tolles & Olson, Los Angeles, CA, for defendant-appellant.

Karl L. Rubinstein, Rubinstein & Perry, Los Angeles, CA, for plaintiff-appellee.

Before: FLETCHER, PREGERSON, and NORRIS, Circuit Judges.

WILLIAM A. NORRIS, Circuit Judge:

This case presents two questions: First, whether a remand order based on abstention is reviewable, and, if so, whether it can be reviewed on appeal, or only by a petition for a writ of mandamus. Second, and more importantly, we consider whether the *Burford* abstention doctrine allows a federal court to surrender jurisdiction to a state court in a case in which no equitable relief is sought.

The district court remanded this case to state court under the *Burford* abstention doctrine. Allstate filed a notice of appeal, which it requested be considered as a petition for a writ of mandamus if review by appeal was not available. Treating this action as an appeal, we reverse because abstention was inappropriate.

I

John Garamendi is the Insurance Commissioner (the "Commissioner") of the State of California and the statutorily designated trustee for insolvent insurance companies.[1] This case arises out of the Commissioner's efforts to liquidate the Mission Group of Insurance companies and recover reinsurance proceeds from several reinsurers, including Allstate Insurance Company ("Allstate").

Between 1962 and 1985, Allstate and the Mission Insurance Group[2] entered into numerous reinsurance agreements, pursuant to which each company reinsured the primary

---

1. John R. Garamendi succeeded Roxani Gillespie on January 6, 1991 as Insurance Commissioner of the State of California.

2. The Mission Insurance Group consists of the following companies: Mission Insurance Compa-

ny and its subsidiaries Mission National Insurance Company and Enterprise Insurance Company; Mission Reinsurance Corporation; and Holland–America Insurance Company.

insurance obligations of the other. On October 31, 1985, the Commissioner filed an application in Los Angeles County Superior Court ("the Liquidation Court") requesting the appointment of a conservator for the company.[3] The Liquidation Court first ordered the Mission Insurance Group into conservatorship, and then, upon determining that it could not be rehabilitated, ordered that it be liquidated. In August, 1990, the Liquidation Court appointed the Commissioner as liquidator. Pursuant to the California Insurance Code, the Commissioner filed suit on December 22, 1986 against approximately 300 reinsurers of the Mission Insurance Group seeking to recover money due the Mission Insurance Group under various reinsurance agreements. That case was filed in Los Angeles Superior Court ("*Gillespie I*") and subsequently consolidated with the liquidation proceedings.

In June, 1990, the Commissioner filed this action against Allstate and other insurance companies, alleging the same causes of action alleged in *Gillespie I*.[4] On August 2, 1990, Allstate sought removal of the action on diversity grounds to federal district court under 28 U.S.C. § 1441(c). Once in district court, Allstate moved to compel arbitration, pursuant to an arbitration clause in the reinsurance agreement. Before entertaining the motion, the court heard the Commissioner's motion to remand the action to the state court, which it granted on July 1, 1991.

The district court pointed out that a critical issue in this case is the viability of Allstate's defense that it is entitled to a set-off for the amounts it claims Mission owes it from other reinsurance agreements.[5] Noting that Liquidation Court Judge Kurt Lewin had developed an "intimate familiarity" with

the law in this area by presiding over *Gillespie I*, the district court accepted the Commissioner's argument that *Burford* abstention required it to remand the case to state court because exercising jurisdiction would interfere with a comprehensive state regulatory scheme. Allstate timely appealed to this court.

## II

The Commissioner argues that the district court's abstention order is unreviewable, either by appeal or a writ of mandamus, citing 28 U.S.C. § 1447(d), which states "[a]n order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise," with a single exception, not applicable to this case. This provision, however, applies only to cases remanded pursuant to § 1447(c), when there is a "defect in removal procedure" or "the district court lack[ed] subject matter jurisdiction." *Thermtron Products, Inc. v. Hermansdorfer,* 423 U.S. 336, 345–52, 96 S.Ct. 584, 590–93, 46 L.Ed.2d 542 (1976); *see also Price v. PSA, Inc.,* 829 F.2d 871, 874 (9th Cir.1987), *cert. denied,* 486 U.S. 1006, 108 S.Ct. 1732, 100 L.Ed.2d 196 (1988) (noting that if an order of remand is "not a mandatory remand under § 1447(c), it enjoys no immunity from review"). Here, the district court explicitly based its remand order on a decision to exercise its discretion to abstain from a case that might interfere with a state administrative proceeding, rather than on any ground specified in § 1447(c). Therefore, review of the remand order in this case is not barred by § 1447(d). The question, then, is whether it is appealable, or reviewable only by a writ of mandamus.[6]

---

**3.** The procedures followed by the Commissioner are set forth in Cal.Ins.Code § 1010 *et seq.*

**4.** The causes of action included: declaratory relief; suit on contract, conspiracy to breach and to commit tortious breach and tortious breach of the implied covenant of good faith and fair dealing; and conspiracy to commit tort and tortious denial of the existence of contracts.

**5.** Obtaining a set-off is crucial to Allstate because it would entitle Allstate to deduct the money the Mission Group owes Allstate under the reinsurance contracts from the money it owes the Mis-

sion Group. If Allstate is not entitled to a set-off, it will have to pay Mission and then try to collect what Mission owes it as one of many creditors in the liquidation proceedings.

**6.** The method of review will determine the standard of review. Mandamus is available only when there has been a usurpation of judicial power or a clear abuse of discretion below. *Schlagenhauf v. Holder,* 379 U.S. 104, 110, 85 S.Ct. 234, 238, 13 L.Ed.2d 152 (1964). On appeal, we review the applicability of an abstention doctrine de novo and the decision to abstain for abuse of discretion. *See Privitera v. California*

In *Thermtron Products,* the Supreme Court stated that *"because* an order remanding a removed action does not represent a final judgment reviewable by appeal, the remedy in such a case is by mandamus to compel action, and not by writ of error to review what has been done." 423 U.S. at 352–53, 96 S.Ct. at 593 (emphasis added). The Supreme Court subsequently noted, however, that some orders declining to exercise jurisdiction may be appealable under a narrow exception to the final judgment rule. *See Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 11–13, 103 S.Ct. 927, 934–35, 74 L.Ed.2d 765 (1983). Describing the exception to finality rule as established in *Cohen v. Beneficial Loan Corp.,* 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), the Court held that an abstention order may be appealable as a final collateral order if it "conclusively determine[s] the disputed question, resolve[s] an important issue completely separate from the merits of the actions, and [is] effectively unreviewable on appeal from a final judgement." *Id.,* 460 U.S. at 11–12, 103 S.Ct. at 934 (quoting *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 468, 98 S.Ct. 2454, 2458, 57 L.Ed.2d 351 (1978)). The Court held that an order staying a federal action pursuant to abstention under *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976) qualifies as an appealable final collateral order. *Cone,* 460 U.S. at 11–13, 103 S.Ct. at 934–36. The question, then, is whether a *remand* order may also be appealable as a final collateral order when a district court declines to exercise jurisdiction pursuant to one of the doctrines of abstention.

In the wake of *Moses H. Cone,* we held that a remand order, like a stay, may be appealable as a final collateral order under *Cohen. Pelleport Investors v. Budco Quality Theatres,* 741 F.2d 273, 278 (9th Cir.1984). Thus, despite the general rule in *Thermtron,* a remand order may be appealed as a final collateral order if it is " 'based on a substan-

tive determination on the merits apart from any jurisdictional.' " *Lee v. City of Beaumont,* 12 F.3d 933 (9th Cir.1993) (quoting *Whitman v. Raley's Inc.,* 886 F.2d 1177, 1180 (9th Cir.1989)); *see also Executive Software v. United States Dist. Ct.,* 24 F.3d 1545 (9th Cir.1994). Applying the *Cohen* test to the order in this case, we conclude that a remand order based on abstention is a final collateral order that is reviewable on appeal.

The order in this case satisfies each of the three criteria of the final collateral order test. First, the order conclusively determines a disputed question: whether the facts of the case warrant abstention under *Burford v. Sun Oil,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). *See Moses H. Cone,* 460 U.S. at 12–13, 103 S.Ct. at 935–36 (concluding that stay based on abstention conclusively determines the applicability of the relevant abstention doctrine).

There can be no dispute that the decision also satisfies the second criterion of the final collateral order test. In *Moses H. Cone,* the Supreme Court held that an "order that amounts to a refusal to adjudicate the merits plainly presents an important issue separate from the merits." 460 U.S. at 12, 103 S.Ct. at 935. This holding was based on the understanding that the "completely separate from the merits" requirement is merely "a distillation of the principle that there should not be piecemeal review of 'steps towards final judgment in which they will merge.' " *Id.* at 12 n. 13, 103 S.Ct. at 935 n. 13 (quoting *Cohen,* 337 U.S. at 546, 69 S.Ct. at 1225). In this case, as in *Moses H. Cone,* "there is no step towards final judgment, but a refusal to proceed at all." *Id.* Moreover, in several cases we have concluded that determinations of whether a federal or state court should adjudicate the merits of a case constitute separate decisions apart from the merits for the purposes of the final collateral order test. *See Pelleport,* 741 F.2d at 278; *Clorox v. United States District Court,* 779 F.2d 517, 519–20 (9th Cir.1985).[7]

---

*Bd. of Medical Quality Assurance,* 926 F.2d 890, 895 (9th Cir.1991).

**7.** We have held on several other occasions that a district court's decision to remand pendent state claims after the attached federal claims have

dropped from the case may be reviewed only by mandamus. *See Executive Software v. United States Dist. Ct.,* 24 F.3d 1545 (9th Cir.1994); *Lee v. City of Beaumont,* 12 F.3d 933, 936 (9th Cir. 1993); *Price v. PSA, Inc.,* 829 F.2d 871, 874 (9th

Finally, a remand based on abstention would be effectively unreviewable on appeal after a determination of the merits "because it puts the parties out of federal court." *Pelleport,* 741 F.2d at 278. Moreover, a federal court's decision to abstain would be "unreviewable if not appealed now" because the federal court would be bound to honor the state court's determination on the merits as res judicata. *See Moses H. Cone,* 460 U.S. at 12, 103 S.Ct. at 935.

■ Because the district court's order of remand in this case qualifies as a final collateral order, we will treat Allstate's request for review as an appeal. There is no discretion to abstain in a case that does not meet the requirements of the abstention doctrine being invoked. *Privitera v. California Board of Medical Quality Assurance,* 926 F.2d 890, 895 (9th Cir.1991). We review whether those requirements are met de novo. *Gartrell Constr., Inc. v. Aubry,* 940 F.2d 437, 441 (9th Cir.1991); *Privitera,* 926 F.2d at 895. When those requirements are met, the district court's decision whether or not to abstain is reviewed for an abuse of discretion. *Mission Oaks Mobile Home Park v. City of Hollister,* 989 F.2d 359, 360 (9th Cir.1993), *cert. denied,* ── U.S. ──, 114 S.Ct. 1052, 127 L.Ed.2d 373 (1994).

## III

■ Relying on the abstention doctrine articulated in *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), the district court abstained from hearing this case. Appellant argues that the court abstained inappropriately because *Burford* ab-

stention does not apply to suits seeking solely legal relief.[8] We agree.

Under 28 U.S.C. § 1332, the District Court in this case clearly had jurisdiction.[9] It is undisputed that "Congress, and not the Judiciary, defines the scope of federal jurisdiction within the constitutionally permissible bounds." *New Orleans Public Service, Inc. v. Council of the City of New Orleans,* 491 U.S. 350, 359, 109 S.Ct. 2506, 2513, 105 L.Ed.2d 298 (1989) [hereinafter *"NOPSI"*]. The threshold question, then, is under what conditions, if any, Congress intended to permit courts to abstain from exercising the jurisdiction conferred under § 1332.

Although courts have consistently construed congressional grants of jurisdiction as imposing on federal courts a "virtually unflagging obligation ... to exercise the jurisdiction given them," *e.g., Colorado River,* 424 U.S. at 817, 96 S.Ct. at 1246, the Supreme Court has decided that Congress intended to leave the judiciary a degree of discretion in a small subset of cases. Historically, courts of Chancery exercised significant discretion in determining whether to grant equitable relief, as did common law courts in issuing the "prerogative writs" of habeas corpus, certiorari, mandamus and prohibition. *See* David L. Shapiro, Jurisdiction and Discretion, 60 N.Y.U.L.Rev. 543, 572 (1985). Early courts did not have comparable discretion to decline to grant ordinary legal relief. *Id.* at 571–72. The First Judiciary Act of 1789, which created the jurisdiction of the federal district courts, apparently was not intended to deprive courts of this equitable discretion. *See* 1 Stat. 73 (1789). Therefore, courts presumed that they retained the ability to refuse

Cir.1987); *Paige v. Henry J. Kaiser Co.,* 826 F.2d 857, 865–66 (9th Cir.1987); *Survival Systems v. U.S.D.C.,* 825 F.2d 1416, 1418 (9th Cir.1987). We explained that in such cases the final collateral order doctrine does not apply because the decision to decline to hear pendent state law claims was wholly discretionary and, therefore, not a substantive decision. However, as noted above, the Supreme Court has held that the decision to decline jurisdiction under one of the established doctrines of *abstention* is a substantive determination apart from the merits for purposes of applying the final collateral order doctrine. To the extent there is a tension between these two lines of decision, we must follow the clear holdings of the Supreme Court.

8. Appellant further argues that, in any event, this case does not meet the requirements for abstention under *Burford.* Because we hold that the *Burford* doctrine does not apply to suits seeking solely legal relief, we do not reach this question.

9. 28 U.S.C. § 1332 provides: "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $50,000, exclusive of interest and costs and is between ... citizens of different states...."

equitable relief or even decline to hear cases in equity. *See Railroad Comm'n of Texas v. Pullman Co.,* 312 U.S. 496, 500–01, 61 S.Ct. 643, 645–46, 85 L.Ed. 971 (1941); *NOPSI,* 491 U.S. at 359, 109 S.Ct. at 2513–14. The Supreme Court subsequently created rules for the exercise of this discretion to decline to hear cases in equity, developing several doctrines of abstention. *See, e.g., Colorado River,* 424 U.S. 800, 96 S.Ct. 1236; *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971); *Burford,* 319 U.S. 315, 63 S.Ct. 1098; *Pullman,* 312 U.S. 496, 61 S.Ct. 643.

In *Burford,* the Supreme Court explicitly premised its order of abstention on the power, unique to courts of equity, to refuse, for policy reasons, to exercise their jurisdiction:

> Although a federal *equity court* does have jurisdiction of a particular proceeding, it may, in its sound discretion ... refuse to enforce or protect legal rights, the exercise of which may be prejudicial to the public interest....

319 U.S. at 317–18, 63 S.Ct. at 1099 (quotation marks and citations omitted) (emphasis added). In *Alabama Public Service Commission v. Southern Ry. Co.,* 341 U.S. 341, 71 S.Ct. 762, 95 L.Ed. 1002 (1951), the only other case in which the Supreme Court has upheld a *Burford* abstention, the power to abstain was again grounded in the discretion afforded equitable courts in granting relief:

> This withholding of extraordinary relief by courts having authority to give it is not a denial of the jurisdiction which Congress has conferred on the federal courts.... On the contrary, it is but a recognition ... that a federal *court of equity* ... should stay its hand in the public interest when it reasonably appears that private interests. will not suffer ...
>
> It is in the public interest that federal *courts of equity* should exercise their *dis-*

*cretionary power to grant or withhold relief* so as to avoid needless obstruction of the domestic policy of the states.

341 U.S. at 350–51, 71 S.Ct. at 769 (quoting *Great Lakes Dredge & Dock Co. v. Huffman,* 319 U.S. 293, 297–98, 63 S.Ct. 1070, 1073, 87 L.Ed. 1407 (1943)) (emphasis added).

*Burford* abstention is not the only abstention doctrine grounded in the unique power of courts of equity. Cases involving other abstention doctrines also emphasized that the source of the courts' authority to develop a doctrine of abstention was based upon the discretion to decline or grant equitable relief. *See Baggett v. Bullitt,* 377 U.S. 360, 375, 84 S.Ct. 1316, 1324–25, 12 L.Ed.2d 377 (1964); *Younger,* 401 U.S. at 43, 91 S.Ct. at 750; *Pullman,* 312 U.S. at 500–01, 61 S.Ct. at 645–46.

The reasoning of *Burford, Pullman* and the other cases locating the power to abstain in the unique powers of equitable courts has never been rejected. The Supreme Court has, however, subsequently applied some forms of abstention doctrine to cases at law, without discussion.[10] Furthermore, the Supreme Court explicitly expanded some forms of abstention to a few "special" classes of damage actions.[11] These cases were severely criticized by dissenting justices. In his dissent in *Fair Assessment in Real Estate Association v. McNary,* Justice Brennan pointed out that "[w]hile the 'principle of comity' may be a source of judicial policy, it is emphatically no source of judicial *power* to renounce jurisdiction.... There is little room for the 'principle of comity' in actions at law where, apart from matters of administration, judicial discretion is at a minimum." 454 U.S. 100, 119–21, 102 S.Ct. 177, 188, 70 L.Ed.2d 271 (1981) (Brennan, J., dissenting).

The recent Supreme Court decision in *NOPSI* suggests a renewed recognition that the power of federal courts to abstain from

---

**10.** *See Fornaris v. Ridge Tool Co.,* 400 U.S. 41, 91 S.Ct. 156, 27 L.Ed.2d 174 (1970); *United Gas Pipe Line Co. v. Ideal Cement Co.,* 369 U.S. 134, 82 S.Ct. 676, 7 L.Ed.2d 623 (1962); *Clay v. Sun Ins. Office, Ltd.,* 363 U.S. 207, 80 S.Ct. 1222, 4 L.Ed.2d 1170 (1960).

**11.** *See Fair Assessment in Real Estate Association v. McNary,* 454 U.S. 100, 102, 102 S.Ct. 177, 179,

70 L.Ed.2d 271 (1981) (citing the "important and sensitive" nature of challenges to state tax systems); *Louisiana Power & Light Co. v. Thibodaux,* 360 U.S. 25, 28, 79 S.Ct. 1070, 1072, 3 L.Ed.2d 1058 (1959) ("Although an eminent domain proceeding is deemed for certain purposes of legal classification a 'suit at common law' ... it is of a special and peculiar nature").

exercising their jurisdiction, at least in *Burford* abstention cases, is founded upon a discretion they possess only in equitable cases. The Court noted that the authority to abstain is rooted in the "federal courts' discretion in determining whether to grant certain types of relief—a discretion that was part of the common-law background against which the statutes conferring jurisdiction were enacted." 491 U.S. at 359, 109 S.Ct. at 2513. The Court made clear that this discretion in granting "certain types of relief" belongs to "a federal court *sitting in equity* [which] must decline to interfere with the proceedings or orders of state administrative agencies" when the *Burford* criteria are met. 491 U.S. at 361, 109 S.Ct. at 2514 (emphasis added). By locating the source of the power to abstain in historical equitable discretion, while also reminding courts that their obligation to hear cases within their jurisdictional grants is "virtually unflagging," *id.,* the Supreme Court gave strong indication that the power to abstain under *Burford* should not apply in suits at law.

*NOPSI* provided such a strong affirmation of *Burford* abstention's ties to equity that other circuits have been provoked to reconsider the application of *Burford* abstention to cases at law. The Third Circuit declined to follow a prior case that had applied *Burford* to damage actions because the prior case "predated *NOPSI,* and the Supreme Court in *NOPSI* has given no indication that the distinction between legal and equitable relief has been diluted." *University of Maryland v. Peat Marwick Main & Co.,* 923 F.2d 265, 272 (3d Cir.1991) (rejecting *Lac D'Amiante du Quebec, Ltee v. American Home Assurance Co.,* 864 F.2d 1033 (3d Cir.1988)); *see also Fragoso v. Lopez,* 991 F.2d 878, 882 (1st Cir.1993) (stating that in light of *NOPSI,* the fact that the plaintiffs sought only legal relief was a reason to decline to apply *Burford* abstention); *Costle v. Fremont Indem. Co.,* 839 F.Supp. 265, 270 (D.Vt.1993) (finding, in a case between a reinsurer and state insurance commissioner acting as liquidator for an insolvent insurer, that *NOPSI* limits *Burford* abstention to equitable cases); *Duane v. Government Employees Ins. Co.,* 784 F.Supp. 1209, 1223 (D.Md.1992) (holding that *Burford* abstention is limited to equitable cases).

The Supreme Court's recent, restrictive reading of *Burford,* together with its reaffirmation of the doctrine's equitable predicate, leads us to conclude that a district court may not abstain under *Burford* when the plaintiff seeks only legal relief.

The district court's remand order is VACATED and the case is REMANDED for proceedings consistent with this opinion.